10485

## LEE *ET AL.* v. BOYKIN.

### (103 S. E. 777.)

1. BILLS AND NOTES—SIGNERS ON BACK BEFORE NEGOTIATION, MAKERS AND NOT INDORSERS.—Plaintiffs and defendant, who wrote their names in succession on the back of notes before they were negotiated, at one and the same time, were makers, and not indorsers.

2. BILLS AND NOTES—CONTRIBUTION—SIGNERS ON BACK BEFORE NEGOTIATION HELD MAKERS AS BETWEEN THEMSELVES, AND LIABLE TO CONTRIBUTE.—Plaintiffs and defendant, who together signed notes on the back before they were negotiated, being makers of a single contract, *held* makers as between themselves, and not technical indorsers, their contract being single and joint; each party having a like obligation to the other signers, to the holder, and to each other, so that each was liable to contribute to any payment by the others.

3. EVIDENCE—INCAPACITY OF WITNESSES A MATTER OF COMMON PROFESSIONAL KNOWLEDGE.—It is a matter of common professional knowledge that most witnesses cannot comprehend the difference between a man's reputation and the witnesses' opinion of the man.

4. CONTRIBUTION—EVIDENCE HELD TO SHOW PERSONS WHO SIGNED ON BACK BEFORE NEGOTIATION INTENDED PRO RATA LIABILITY.—Evidence *held* to show that parties to suit for contribution in signing together on the back before negotiation notes to raise money for their common business enterprise intended each to be liable for his *pro rata* share of the total amount.

5. CONTRIBUTION—CONTRACT TO BE LIABLE FOR PRO RATA SHARE EFFECTED BY INTENTION OF PARTIES.—Persons who signed notes, each intending to become liable for his *pro rata* share of the total amount, an intention evidenced by the circumstances, effected such a contract, apart from spoken words expressly to that effect.

Before MOORE, J., Kershaw, December, 1919.     Affirmed.

Action for contribution on ten promissory notes by J. B. Lee, V. M. Montgomery, A. F. McKissick, Aug. W. Smith and Sigo Myers against L. W. Boykin. From judgment for plaintiffs, the defendant appeals.

*Messrs. Kirkland & Kirkland,* for appellant, cite: *Plaintiffs and defendants were endorsers of company's notes:* 16 L. R. A. 143 (N. J.) ; 45 S. C. 373 ; 23 S. C. 139. *Distinction between corporation and its stockholders is clearly drawn:* 96 S. C. 106. *And indorsement of company notes by stockholders is an accommodation endorsement:* 170 Fed. 434 ; 174 Fed. 72. *Understanding between plaintiffs as to their liability inter se did not constitute an agreement:* 56 S. C. 480 ; 35 S. E. 408 ; 3 R. C. L. 1133 ; 29 S. C. L. (2 Spear) 747 ; 11 Am. Dec. 792. *And a special agreement cannot be* implied: 7 Words & Phrases 6572 ; 54 Am. St. Rep. 505. *Distinction between liability of endorsers of a note before negotiation to the holder thereof and to each other:* 28 L. R. A. (N. S.) 1039. *Necessity of definite agreement among endorsers to support contribution:* 7 A. & E. Enc. Law 359-60 ; 61 Ind. 52 ; 28 Am. Rep. 665 ; 160 Mass. 58 ; 69 N. W. 842.

*Messrs. L. W. Perrin* and *L. A. Wittkowsky,* for respondent, cite: *Parties were makers as to each other; certainly not accommodation indorsers:* 152 N. Y. Sup. 757 ; 167

. App. Div. 198. *Distinction where indorsements are for accommodation and for value:* 56 S. C. 480; 29 S. C. L. (2 Spear) 628; Whitley Bills, etc., 207-211; 197 Pa. St. 51; 182 Pa. St. 292. *Where stockholders indorse note of corporation they are not liable in the order in which they indorsed:* 152 N. Y. Supp. 757; 167 App. Div. 198. *But is a question of fact as to whether it was the intention of the parties to become jointly liable as sureties: Ibid. —. Sufficient proof if surrounding circumstances indicate the agreement:* 138 App. Div. (N. Y.) 208; 176 Mass. 570, 575; 83 Me. 336; 62 Mich. 473; 267 Ill. 378. *Above rule has no application to accommodation indorsers:* 66 N. Y. 433, 437. *Express agreement necessary to make accommodation indorsers liable ratably between themselves:* 174 Fed. 72; 62 U. S. 432; 102 N. Y. 93; 34 Wisc. 596; 66 N. Y. 433, 437. *True intention of indorsers as between themselves can be shown by parol:* 4 A. & E. Enc. Law (2d Ed.) 492; 127 Mass. 386; 12 Wis. 639; 158 N. Y. 649; 192 N. Y. 513; 65 Ore. 93; A. & E. Enc. Law (2d Ed.) 356. *Where liability joint contribution will be required:* 146 N. Y. Supp. 961; App. Div. 830; 150 N. Y. Supp. 73; 144 S. W. 847; 31 Mass. 285; 63 N. Y. Supp. 69; 42 Me. 381; 45 S. W. 751; 83 S. W. 913; 7 Ky. Law Rep. 834; 107 Ind. 398; 8 N. E. 284; 35 Ind. —; 20 Me. 322; 9 Cyc. 798. *Contribution on original note is not changed where new note is given as collateral security:* 32 Cyc. 280. *Contribution generally:* 13 Cyc. 1496.

July 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE
. GAGE.

The plaintiffs and the defendant wrote their names in succession on the back of 10 notes, and the question at issue
. is their relationship one to another thereabout. We shall

refer to them as the signers, for indorsers has a technical meaning.

The plaintiffs paid the notes. The defendant refuses to pay, because his name was last written on the note; and he now refuses to contribute, to which end this action was brought. The transaction was had before the enactment of the statute governing negotiable instruments. The master found the facts for the plaintiff, but the law for the defendant. The Circuit Court concluded the law for the plaintiffs, having first adopted the master's conclusion of fact. The defendant has appealed by 14 exceptions; but the controlling ones are directed to three points: (1) That as to each other the signers are indorsers and not makers; (2) that the signers, even if makers, are yet indorsers betwixt themselves, and, therefore, not liable to contribute unless there was an agreement aforetime to do so; and (3) that there is no proof of any such agreement. The first postulate depends on the testimony and the law; the second is an issue of law; the third depends upon the testimony and the law, too.

The master and the Circuit Court both conclude that the signers were makers and not indorsers. The testimony sustains that view. The notes were signed before they were floated; the signing was one and the same transaction; it was not done in different times and under different circumstances and with different intent. That constituted the signers makers of one and the same contract. *Johnston v. McDonald,* 41 S. C. 83, 19 S. E. 65. The later case of *Bank v. Tobacco Co.,* 45 S. C. 373, 23 S. S. 139, is not to the contrary.

It is true that the lay witnesses referred to the signers as indorsers; but the word "indorser" has a legal and a grammatical meaning; and because the witnesses characterized the signing as an indorsement in law so much did not make it so.

On the second issue the master thought that if the signers were makers of a single contract, as he held they were, then there was "no sound basis" to hold that as between themselves they were not makers, but, on the contrary, were technical indorsers. He, however, yielded his opinion thereabout to that of a foreign jurisdiction. *Porter v. Huie,* 94 Ark. 333, 126 S. W. 1069, 28 L. R. A. (N. S.) 1039. In that the master was mistaken. The case cited relies upon three authorities, none of which are to the point. The leading authority so cited is *McDonald v. Magruder,* 3 Pet. 470, 7 L. Ed. 744, opinion by Marshall, C. J. The facts of that case made the law of it. The first indorser there was suing the second indorser for contribution; "no intercourse had taken place between the indorser; no contract, express or implied, existed between them;" there was, therefore, no ground to hold the second indorser liable to the first indorser. Not so here; on the contrary, there was a contract betwixt all the signers, so made, as we have held, in time and circumstances as to constitute it a single and joint contract; and it had then all the incidents of such, one of which was that each signer had a like obligation to the other signers, to the holder, and to each other. The decree of the Circuit Court thereabout is right.

Coming to the third and last issue, if the signers are makers, and if they bear that relationship to one another, then whether there was any contract betwixt them to occupy that relationship so as to contribute to a common loss fades away. But even though they bear to each other the relationship of technical indorsers, so that each is only liable in his turn, yet each is liable to the other so as to contribute if there was a contract to that end. The master and the Circuit Court found that there was such a contract, and that it was evidenced, not by words, but by the mute circumstances of the case. And so much is a fact.

It is true that the witnesses made a poor out to prove the contract; but witnesses often do that when it comes to proving a technical point about which a layman is not versed.

It is a matter of common professional knowledge that most witnesses cannot comprehend the difference betwixt a man's reputation and the witnesses' opinion of the man.

When Mr. Lee was on the stand these were the questions on cross-examination and the answers: "Q. Well, you spoke of your understanding about these notes and your liability on them. How did you arrive at that understanding; whom did you have that understanding with? A. I never signed a note, but I know I have it to pay if the others do not. I know that on any paper I indorse. Q. You had no understanding of your liability except what you derived from signing them? A. That was all."

Mr. McKissick testified thus on the same issue: "Q. Mr. McKissick, was there any special personal agreement between the indorsers of these notes that you are aware of in regard to the payment of these notes? A. I realized when I indorsed those notes that I was liable for my proportionate part of those notes. Q. But you did not do that under any particular, specific agreement? A. Not that I know of. Q. Did you have an understanding that you would be liable in proportion to the amount of stock you held in the company? A. No, sir; I was a small stockholder, but when I signed the note I found that I was obligated to the extent of any other signers."

Mr. White testified about the same matter as follows: "I considered my liability on these notes to be my *pro rata*. I expected to pay my part if demanded by the company or the holders. I have no recollection of any discussion among the signers of those notes as to what part each should pay when the notes matured. No understanding that one should be liable more than another. No understanding as to the way the names appeared on the note."

Mr. Smith testified: "Q. Was there any positive, actual agreement between him (Mr. Boykin) and the other parties as to what the liability of each would be? A. We had several meetings, and discussed the matter generally that we had these notes, and we came to the conclusion that we had better settle up and relieve the company of that much indebtedness, and for that reason we just paid up, and when we went to pay up we found Mr. Boykin would not pay his part."

So that literally these laymen were unable to testisfy about a "special personal agreement," and a "positive actual agreement," when they were asked about those relationships. But they did testify that they thought "each signer would pay his *pro rata* part," and "there was no understanding that one would be liable more than another," and "when I signed the note I found that I was obligated to the extent of any other signer," and "I considered my liability on these notes to be my *pro rata.*"

Another controlling circumstance of the case is this: These seven gentlemen signed the notes to get money to promote their common enterprise; the admitted understanding of all of them save Boykin was that each man should be liable for his one-seventh of the fund so raised; that was the sense of the matter, and Boykin must have been of the same mind; his name only happened to be last on the paper because he was not on the spot to sign. It is unreasonable to conclude that the signers intended that the first signer should be liable for the whole debt which was created for the benefit of himself and six others. Three other gentlemen, alike interested in the enterprise, but perhaps with more money in hand, paid at the outstart their *pro rata* in cash in the place of signing a note. That is a circumstance which points to the real character of the transaction. It is morally certain that Boykin knew of this exception, and that he understood the whole transac-

tion to be as we have stated it to be. Therefore, while not a word may have been spoken by the signers to indicate what the liability of each one should be at the wind-up, yet the circumstances of the case indicate as certainly as words could do that which the signers intended thereabout; and that constitutes a contract.

The other issues are minor, and are drawn into those which we have decided.

The judgment is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE HYDRICK disqualified.