ROBERT L. LEACH, Superintendent of Banking, Appellee, v. PEOPLES SAVINGS BANK OF GRAND MOUND, Appellee; LILLIAN C. LICHTENSTEIN, Appellant.

**BANKS AND BANKING:** Deposits—Change in Relation Between Bank
1 and Depositor. A bank depositor wholly ceases to be the creditor of the bank when he turns over his deposit to one of the officers of the bank in furtherance of a personal undertaking in which the bank has no interest whatever.

**MORTGAGES:** Sale—Operation and Effect—Satisfaction of Lien. A mortgagee by bidding in the mortgaged property at foreclosure sale for the full amount of his judgment thereby *satisfies his debt*, even though the property is subject to a prior lien of which he has *constructive* notice only. (See Book of Anno., Vol. 1, Sec. 12376, Anno. 45, 46.)

Headnote 1:   7 C. J. pp. 541, 737.   Headnote 2:   27 Cyc. p. 1788 (Anno.)   ·

*Appeal from Clinton District Court.*—D. V. Jackson, Judge.

## November 17, 1925.

Appellant Lillian C. Lichtenstein filed a claim for $8,000 in the receivership of the Peoples Savings Bank of Grand Mound, Iowa. The district court refused to allow the claim, and from such refusal she appeals.—*Affirmed.*

*H. L. Irwin* and *Skinner & Petersen Law Co.,* for appellant.

*Wolfe, Wolfe & Claussen,* for Peoples Sav. Bank, appellee.

Albert, J.—I.   At the time involved herein, J. W. Reihman was president of the Peoples Savings Bank at Grand Mound, Iowa. He is the uncle of Paul Lichtenstein, who is the brother-in-law of Lillian Lichtenstein. In 1919 Lillian Lichtenstein had approximately $17,000 on deposit in the aforesaid bank. At this time there was under consideration a proposition for the purchase of a certain quarter section of land near Calamus, in Clinton County.

1. Banks and banking: deposits: change in relation between bank and depositor.

It is conceded, or at least the evidence satisfactorily shows, that at this time there existed on said quarter section of land an $8,000 first mortgage and a second mortgage for $5,000. Lillian Lichtenstein acted, in all matters connected herewith, through her husband, E. H. Lichtenstein, who, she says, was her agent in the matter. It was agreed between her husband, Reihman, and Paul Lichtenstein that they would purchase, improve, and sell the farm and divide the profit therefrom three ways: one third to Reihman, one third to Paul Lichtenstein, and the

other one third to Mrs. Lichtenstein and her husband. It was further agreed that Mrs. Lichtenstein should furnish $16,000 in cash, for which she was to receive a first mortgage on the land, and that out of the $16,000 the aforesaid $8,000 and $5,000 mortgages would be paid, and the balance, $3,000, would pass to the credit of Paul Lichtenstein in the Peoples Savings Bank. The title to said land was to be taken in the name of Paul Lichtenstein. In due time this agreement was carried out, and Lillian Lichtenstein receipted to the bank for the $16,000. The deal was closed, and Paul Lichtenstein took title to the land, and made to Lillian Lichtenstein a mortgage thereon for $16,000. Reihman had charge of the closing of the transaction and the distribution of the funds. The $3,000 was duly passed to the credit of Paul Lichtenstein, and the $5,000 mortgage was paid; but the $8,000 first mortgage was never paid, and stood as a first lien on the land at the time this matter was tried in the district court.

The evidence further shows that, at the time the $16,000 was drawn by Lillian Lichtenstein, it was passed to the credit, in the bank, of Reihman, from which he paid the aforesaid $3,000 to Paul Lichtenstein and the $5,000 second mortgage above described. At the June term, 1923, of the Clinton County district court, Mrs. Lichtenstein foreclosed her mortgage against Paul Lichtenstein, and decree was entered on the 11th of June, 1923. In due time special execution was issued, and the land sold. At the sale Mrs. Lichtenstein bid in said land for the sum of $19,387.68, which was the full amount of her judgment, interest, and costs, and she receipted to the sheriff of Clinton County therefor. The bank books in the hands of the receiver show that the $8,000 left in the Reihman account was subsequently checked out by him before the appointment of the receiver.

The claim in this receivership which Mrs. Lichtenstein seeks to have established arose out of the above facts. She claims that she is entitled to have allowed in said receivership her claim for $8,000, representing the money which was to be used for payment of the aforesaid first mortgage on said land. The question that we have to determine is whether or not, under these facts, the district court should have allowed this claim.

It is apparent that Reihman, although the president of the bank, was not acting as an officer of the bank, but as a private individual, in what he did in relation to these matters. The bank was not directly or indirectly interested in the purchase of this land for the profits, if any, to be made on the deal. It was purely a personal transaction between the Lichtensteins and Reihman, and therefore in no way involved the bank. We have long since settled this proposition, and held that, under such circumstances, the bank is not bound by the acts of its officers. *First Nat. Bank of Davenport v. Gifford,* 47 Iowa 575; *Hummel v. Bank of Monroe,* 75 Iowa 689; *Findley v. Cowles,* 93 Iowa 389; *First Nat. Bank v. Gunhus,* 133 Iowa 409; *German Sav. Bank v. Des Moines Nat. Bank,* 122 Iowa 737; *Home Sav. Bank v. Otterbach,* 135 Iowa 157; *Watt v. German Sav. Bank,* 183 Iowa 346. In this same line of cases we have also settled the proposition that, under such circumstances, knowledge on the part of the officer is not imputable to his bank. The fact that the officer of the bank was engaged in an independent transaction of his own distinguishes this case from the case relied upon by the appellant herein, to wit, *Scow v. Farmers & Merch. Sav. Bank,* 136 Iowa 1, and a line of similar cases cited by appellant from other states. The evidence shows that, at the time of the appointment of this receiver, no part of the money was in the bank that came from the $16,000 loan. It follows, therefore, that, under the circumstances recited, the appellant was not a creditor of the bank in any sense, at the time the receiver was appointed.

II.   There is another all-sufficient reason why appellant is not entitled to have this claim allowed. While there is no disputing the fact that out of the $16,000 Reihman should have

2. MORTGAGES: sale: operation and effect: satisfaction of lien. paid the $8,000 first mortgage existing on the land, he did not do so, but appropriated the money to his own use. The evidence shows that the $8,000 mortgage was made in 1914, and was duly recorded in the mortgage records of Clinton County, Iowa, was still outstanding and unpaid at the time of the trial, and hence was constructive notice to the world and Lillian Lichtenstein of its existence. This mortgage was not satisfied of record when Lillian Lichtenstein bid in the property at the foreclosure sale,

and, constructively at least, she put her bid upon the land knowing that the $8,000 first mortgage was unpaid. With that knowledge on her part, she bid the total amount of her judgment, interest, and costs, at $19,387.68. She thus put the value on this piece of land over and above the aforesaid first mortgage, and, having thus fixed the value of the equity beyond the $8,000 mortgage at said amount, she was thereby paid in full the amount owed to her under said mortgage foreclosure. Having thus received the full amount due her, she of course has no claim against the receiver.—*Affirmed.*

FAVILLE, C. J., and EVANS and MORLING, JJ., concur.