SECURITY NATIONAL BANK et al., Appellees, v. GRANT M. BIGELOW et al., Appellees; C. H. KOLTHOFF et al., Appellants.

NOVEMBER 22, 1927.

REHEARING DENIED MARCH 10, 1928.

696

*Geiser & Donohue*, for appellants.

*Senneff, Bliss, Witwer & Senneff*, for plaintiff, appellee.

*M. F. Condon* and *Hurd, Lenehan, Smith & O'Connor*, for First National Bank of New Hampton, appellee.

FAVILLE, J.—The three appellants, together with one Bigelow and one Kenyon, were personally interested in certain land deals. They borrowed $12,000 to carry on said transactions. They gave four notes therefor of $3,000 each, payable to Bigelow. He indorsed the notes, and negotiated one of them to the plaintiff, the Security Bank of Mason City. As we understand the record, one was sold to a bank at Riceville. Two were held by the First National Bank of New Hampton. Kenyon was the cashier of the appellee · bank. Bigelow was the president of said bank. Kenyon has since died. There is nothing in the record to show that any of the joint makers except Bigelow and Kenyon knew who held the three notes, or any of them. While the place of payment was provided in the notes to be at the appellee bank, the notes were not made payable to the bank, but to Bigelow. The makers knew that the notes were past due, and to pay them they negotiated a loan at a bank in Des Moines, in the sum of $9,698. The proceeds of this loan were in the form of a draft, which was made payable to "C. H. Kenyon, cashier." This draft was delivered by one of the joint debtors, Kolthoff, to Kenyon and Bigelow at the appellee bank, for the purpose of paying said three notes. No specific directions appear to have been given by Kolthoff. He and Bigelow and Kenyon were all equally interested in their joint enterprise and in the payment of the notes with the proceeds of the draft. Kenyon indorsed the draft, and it was sent to the First National Bank of Chicago as a remittance by the appellee bank. Credit was given the appellee bank for the amount by the Chicago bank. No deposit was made in any account in appellee bank. The two notes then in the hands of the bank and payable to it were retired. The third note, being the one held by the Mason City bank, was not

paid off. Instead, the balance of the proceeds of the draft was used to take up an individual note of Bigelow's that was held by a bank at Alta Vista.

The question in the case is whether or not, under said state of facts, the First National Bank is liable to the cross-petitioners for the portion of said draft so misappropriated in payment of Bigelow's note. The question becomes in reality one of fact, as to whether the First National Bank was acting for the cross-petitioners in the transaction, and was guilty of a misappropriation of the funds, or whether Kenyon and Bigelow were acting individually for themselves and their copartners in the transaction. The transaction at the time the draft was delivered at the appellee bank took place between Kolthoff, one of the copartners, and Bigelow, the president of the bank, and Kenyon, the cashier, both of whom were also copartners and joint makers of the note. Kolthoff was not produced as a witness, and Kenyon is dead. The assistant cashier testified with regard to the records in the bank as follows:

"This draft went to the credit of the First National Bank, and the assets of the First National Bank were augmented to the amount of this draft at the time it was sent to the First National Bank in Chicago. The two notes at the First National Bank and one at Alta Vista were paid out of the proceeds of Exhibit 5 [the draft]. The two notes at the First National Bank were its property. There were $6,000 of bills receivable paid on that particular day. There was another credit of $3,000 to the Alta Vista Savings Bank."

Bigelow, who was president of the appellee bank, and also one of the copartners in the land deal, is the only witness who took part in the transaction when the draft was delivered to himself and Kenyon by Kolthoff. He said, in part:

"A. J. Kolthoff brought Exhibit 5 to the First National Bank of New Hampton. It was handed to Mr. Kenyon at that time. Mr. Kenyon was cashier of the First National Bank. I believe Mr. Donovan and I were at the bank at the time. It was turned into the First National Bank of New Hampton, to take up the notes of Kolthoff *et al.* * * * Q. What, if anything, was said, at the time that was delivered to the First National Bank, or at the First National Bank? A. I don't know that anything was said. * * * Q. Mr. Bigelow, do you know whether

698

or not this draft was turned in to the First National Bank for the purpose of paying anything? A. Yes. * * * Q. You may state whether or not you, as the president of the First National Bank of New Hampton, ever had any talk or conversation with A. J. Kolthoff, the person who brought this draft, with reference to the payment of any notes. A. Yes, sir. * * * It is pretty hard at this late date to say what was said. The substance of this paper was due, wasn't satisfactory, and we would like to have it paid. I refer to the notes growing out of our transactions. Q. And what were those notes? A. There were two particular notes in the First National Bank. There were at least two in the First National Bank. * * * Q. What are those notes you spoke of? Describe them, and tell what they are. A. It would be the notes growing out of the deal, which are all the notes and Kolthoff paper, which consisted of two notes in the bank and this note and the note at Riceville. Q. When you say this note, you refer to Exhibit 4? A. Yes. * * * Q. Mr. Bigelow, do you know what was done with the proceeds of this draft, Exhibit 5? A. Yes. Q. What was done with it? A. Two notes were taken up at the First National Bank, and one note at the Alta Vista bank. Q. Whose note was at the Alta Vista Savings Bank? A. It was a note of mine, for my accommodation. It was my own note. The amount of the notes taken up by the First National Bank—the principal of each was $3,000. The note at the Alta Vista Savings Bank was $3,000. That was paid out of this draft, Exhibit 5. I think Mr. Kenyon wrote the letter relative to the payment of the Alta Vista note, and gave them credit on the books. I think neither A. J. Kolthoff, Phil Lahner, or C. H. Kolthoff ever said anything to me, as president of the bank or individually, about applying any part of this draft, Exhibit 5, to the payment of the Alta Vista note. Q. Mr. Bigelow, I will ask you again,—you may state whether or not, as president of the First National Bank of New Hampton, Iowa, on November 22, 1923, at the time this draft, Exhibit 5, was turned in to the bank, knew what the draft was turned in for. A. Yes. * * * I testified that a part of Exhibit 5 was used to pay my note at Alta Vista. The note that was taken up was marked 'Friend.' I had signed and indorsed the note. This amount was taken out of Exhibit 5. C. H. Kenyon, the cashier of the First National Bank at that

time, took care of the matter. * * * Q. And all these transactions that took place that day you were acting in carrying out a transaction for the five men,—that had nothing to do with the First National Bank, had it?

"By Mr. Geiser: Objected to, as calling for the opinion and conclusion of the witness, incompetent, irrelevant, not cross-examination.

"The Court: That is overruled. (Defendants Lahner and Kolthoff except.) A. Yes."

I. Error is predicated upon the overruling of the objection last above set forth.

Bigelow was a witness for the appellants. The question was asked on cross-examination. Appellants say in argument that "agency cannot be established by the declarations or statements of the agent." But this was not a declaration. We have repeatedly held that an agent may testify as to his authority, even though his declarations are not admissible. *Van Sickle v. Keith*, 88 Iowa 9; *Schlitz Brew. Co. v. Barlow*, 107 Iowa 252; *O'Leary Bros. v. German-American Ins. Co.*, 100 Iowa 390. Appellants' contention at this point cannot be sustained.

II. The vital question in this case is whether or not, under the record, there was a question for the jury as to whether Bigelow and Kenyon were acting as officers of the bank or as copartners with the appellants in receiving the draft. Before the appellee bank can be held, it must appear that the bank, as a corporation, owed some duty to the appellants in the transaction. The mere fact that Bigelow and Kenyon were officers of the bank is not sufficient alone to charge the bank with misappropriation of the proceeds of the draft. The draft was not taken to the bank by Kolthoff for the purpose of having the bank disburse the proceeds thereof. Bigelow had been intrusted with the original notes to negotiate. He and Kenyon were both interested in having the notes paid off. They knew where the notes were held. So far as shown, the other joint makers did not know who owned the notes. The mere fact that the draft was payable to "Kenyon, cashier," is by no means controlling on the question as to whether the acts of Kenyon and Bigelow were the acts of the bank. Under the facts of this case, the word

"cashier" was *descriptio personae.* It did not create owner-ship of the draft in the appellee bank. Kenyon and Bigelow held the draft and the proceeds thereof for the benefit of the copartnership of which they were members. The fact that the draft was indorsed by Kenyon and credit given to the appellee bank therefor with the bank in Chicago did not change the re-lationship of Bigelow and Kenyon to the proceeds. The appellee bank was merely the instrumentality through which Bigelow and Kenyon misappropriated the funds of their copartners to their own use. They could have done the same by cashing the draft at any other bank. The appellee bank did not profit by the payment of Bigelow's note to the Alta Vista bank.

There was no wrongful act in the interest of the bank. We think the evidence establishes that, in misapplying the funds in question, Bigelow and Kenyon were acting in their individual capacity, and not as officers of the appellee bank, and that they, and not the bank, are liable for their wrongful act.

We have recently had occasion to pass upon the rule of law applicable to a similar situation in the case of *Leach v. Peoples Sav. Bank,* 200 Iowa 954, wherein we held that, where the trans-action was a purely personal one, the bank was not bound by the acts of its officers. See, also, *First Nat. Bank v. Gifford,* 47 Iowa 575; *Hummel v. Bank of Monroe,* 75 Iowa 689; *Findley v. Cowles,* 93 Iowa 389; *German Sav. Bank v. Des Moines Nat. Bank,* 122 Iowa 737; *First Nat. Bank v. Gunhus,* 133 Iowa 409; *Home Sav. Bank v. Otterbach,* 135 Iowa 157; *Watt v. German Sav. Bank,* 183 Iowa 346. We do not need to review the facts of the cited cases. The general rule is established, and it con-trols the instant case. Here, Bigelow and Kenyon were person-ally interested in the transaction. They were acting for them-selves, and not for the bank, in misappropriating the proceeds of the draft that belonged to themselves and their associates jointly. The bank gained nothing by their wrongful act. They injured their colleagues, by whom they had been intrusted with the funds to pay the notes upon which they were jointly liable.

The case did not present a question for the jury, and the court did not err in directing a verdict for the appellee.

The judgment is—*Affirmed.*

EVANS, C. J., and STEVENS, KINDIG, and WAGNER, JJ., concur.