## HUNN et al. v. LEWIS et al. *

Circuit Court of Appeals, Eighth Circuit.
March 17, 1928.

No. 7763.

**1. Appeal and error ⬳435—Objection to service of citation after expiration of time for appealing held waived by accepting service and general appearance in appellate court.**

Objection that citation was served after expiration of time for appealing *held* waived by accepting service thereof and entering general appearance in the appellate court without reserving any objection to service of citation.

**2. Appeal and error ⬳526—Record on appeal should contain report ·and findings of master, exceptions thereto, and master's certificate of evidence.**

Report and findings of special master, exceptions taken thereto, and certificate of special master stating what evidence was before him should be contained in record on appeal.

**3. Appeal and error ⬳687, 694(1)—Assignments of error reciting that court erred in adopting special master's findings held futile, in absence from record of master's findings, exceptions thereto, and certificate of evidence.**

Where record on appeal did not contain report or findings of special master, exceptions thereto, nor certificate of master stating evidence before him, and decree adopted and confirmed facts found by special master without setting them out, assignments of error merely reciting that court erred in finding facts found by special master to be correct and in adopting and confirming special master's findings *held* futile.

**4. Appeal and error ⬳193(5)—Failure of bill of note indorser suing coindorsers for contribution to allege maker's insolvency, not raised by objection in limine, held immaterial on appeal, where record showed insolvency.**

In suit in equity for contribution brought by indorser on a note against solvent coindorsers, any defect in bill because of failure to allege insolvency of corporate maker was one of form, and will be disregarded by appellate court where no objection was taken thereto in limine and whole record showed such insolvency, since note was not paid by maker at maturity, eight of indorsers made payment thereon without suit, and defense was made on other grounds.

**5. Contribution ⬳9(5)—In suit for contribution, cross-bill reciting transaction in which accounting "might" show cross-complainants entitled to contribution from plaintiff held not to state cause of action against plaintiff.**

Where indorser sued solvent coindorsers in equity for contribution, defendants' cross-bill, merely alleging that a certain contract of purchase had been entered into in which H., the corporate maker of note, cross-complainants, and plaintiff were interested, that cross-complainants were entitled to a general accounting on which it might be determined that cross-complainants had a right of contribution against plaintiff, without alleging that any of cross-complainants made any payment in discharge

*Rehearing denied May 21, 1928.

of obligation common to cross-complainants and plaintiff, *held* properly dismissed as stating no cause of action for contribution against plaintiff.

**6. Courts ⬳343—Equity rule authorizing bringing in new parties to complete determination of counterclaim presupposes existence of counterclaim against plaintiff and proper pleading thereof (New Equity Rule 30).**

New Equity Rule 30, providing for bringing in of new parties necessary to the complete determination of a counterclaim, presupposes the existence of a counterclaim against plaintiff and the proper statement thereof in the answer.

**7. Contribution ⬳7—Price bid for land by purchaser at execution sale, in absence of fraud or irregularity, fixes its value as affects former owner's rights to contribution.**

In absence of fraud or irregularity, price bid for land by a purchaser at an execution sale fixes value of the land as affects former owner's right to contribution.

**8. Execution ⬳271—Doctrine of caveat emptor applies to sales on execution.**

The general rule, which is recognized by courts of Iowa, is that doctrine of caveat emptor applies to sales on execution.

**9. Execution ⬳269—Purchaser at execution sale will ordinarily be protected against outstanding equities of which he had no notice.**

Purchaser at execution sale. will ordinarily be protected against outstanding equities of which he had no notice, actual or constructive, before the sale.

**10. Estoppel ⬳68(1)—Coindorsers purchasing indorser's property at execution sale under judgment on note indorsement held estopped to deny indorser paid on note amount bid for land.**

Where judgment against plaintiff on his indorsement of corporation's note was satisfied by execution sale of his interest in certain land, in which sale purchaser acting for certain coindorsers bid amount of said judgment with interest, *held* that coindorsers, when sued by plaintiff for contribution, were estopped to deny that plaintiff paid on note amount bid by purchaser at execution sale because land was not worth amount of bid because of incumbrances, in absence of showing that purchaser made any effort to ascertain condition of title before sale, or that, after discovering incumbrances, he made any effort to have sale set aside.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Suit by E. A. Lewis and others against C. E. Hunn, executor of the estate of F. L. Miner, deceased, and others, in which defendants answered and filed cross-bill. From an adverse decree, defendants appeal. Affirmed.

H. S. Hunn, of Des Moines, Iowa (C. E. Hunn, of Des Moines, Iowa, on the brief), for appellants.

Robert J. Bannister, of Des Moines, Iowa (H. H. Stipp, E. D. Perry, Vincent Starzinger, and Fred A. Little, all of Des Moines, Iowa, on the brief), for appellees.

Before KENYON and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is a suit in equity for contribution, brought by an indorser on a promissory note against the solvent coindorsers. Jurisdiction is based upon diversity of citizenship and the requisite amount involved. Appellee Lewis, the plaintiff, obtained a decree for various amounts against several of the defendants. They appealed.

[1] At the outset we are met by a motion to dismiss the appeal, on the ground that no citation was issued and served during the term of the Circuit Court of Appeals which was pending at the time when the appeal was perfected, or during the next ensuing term; and that at the close of the latter term the appeal became inoperative and no citation could validly issue thereafter.

The appeal was allowed July 1, 1926. The May, 1926, term of this court was then pending. The next ensuing term began September 6, 1926, and ended not later than December 6, 1926—the opening date of the December, 1926, term. The citation was issued January 7, 1927, and served January 12, 1927.

The rule contended for by appellee finds support in the following cases: Jacobs v. George, 150 U. S. 415, 14 S. Ct. 159, 37 L. Ed. 1127; Altenberg v. Grant (C. C. A.) 83 F. 980; Railroad Equipment Co. v. Southern Ry. Co. (C. C. A.) 92 F. 541; Gray v. Grand Forks Mercantile Co., 138 F. 344 (C. C. A. 8); Hart v. Wiltsee (C. C. A.) 16 F.(2d) 838.

The appellants meet this motion to dismiss with the statement that the appeal was allowed in open court during the judgment term, and therefore no citation was necessary, citing Jacobs v. George, supra. Whatever may have been the fact, the record does not affirmatively show that the appeal was allowed in open court. Appellants further contend that any failure to serve the citation in time was waived by appellee (1) by accepting service of the citation; (2) by entering a general appearance in the appellate court without reserving any objection to the service of the citation. We think this contention should be sustained. The issuance and service of a citation is not jurisdictional (In re T. E. Hill Co. [C. C. A.] 148 F. 832; Nome & Sinook Co. v. Ames Co. [C. C. A.]

187 F. 928); and the citation may be waived by general appearance or by acceptance of service of a defective citation (Bigler v. Waller, 12 Wall. 142, 20 L. Ed. 260; Tripp v. Santa Rosa Street R. R., 144 U. S. 126, 129, 12 S. Ct. 655, 36 L. Ed. 371). See Goodwin v. Fox, 120 U. S. 775, 7 S. Ct. 779, 30 L. Ed. 815. We think that by acceptance of service of the citation and by general appearance there was a waiver in the case at bar. The motion to dismiss is denied.

We turn to the merits. The salient facts are as follows: The Chequest Stone Corporation, organized under the laws of Iowa, on December 23, 1919, borrowed $25,000 from the People's Savings Bank of Des Moines, Iowa, and gave its promissory note therefor to the bank, payable on or before ninety days from date. The note was indorsed by eleven officers or stockholders of the maker corporation, including appellee Lewis. Interest was thereafter paid on the note to January 1, 1921. The principal remaining unpaid, eight of the indorsers made payments on the principal in May and June, 1921, amounting to $17,500. The bank then brought suit for the balance against the corporation and the remaining three indorsers, including Lewis. February 7, 1923, judgment was obtained against each defendant in the sum of $6,686.32, together with attorney's fees and costs. This judgment was assigned by the bank the next day to Frank L. Townsend, who took the assignment as trustee for the benefit of the indorsers who had contributed toward the payment of the note. The full amount due on the judgment was paid for the assignment. Thereafter execution on said judgment was taken out and levy made upon certain land in which Lewis, one of the judgment debtors, had an interest. On August 2, 1924, sale was made at public auction by the sheriff of Lewis' interest in the land to Frank L. Townsend for the amount of the judgment and interest, viz. $7,629.35; and a sheriff's certificate was issued to Townsend. In making the purchase, Townsend was still acting as trustee. The debt represented by the $25,000 note was thus finally liquidated.

Thereafter, on December 31, 1924, Lewis brought the present suit for contribution against seven of the coindorsers, alleging that he had been compelled to pay more than his share of the note upon which they were all equally liable. The three remaining indorsers and the corporation, Chequest Stone Corporation, were not made parties. It was alleged and proven that these three indorsers or their estates were insolvent. Later, un-

der an amendment to the bill, it was proven that defendant Kenneth J. Maine was insolvent.

Most of the foregoing facts were set up either in the bill or in the answer, and all were practically undisputed.

The answer denied any liability for contribution, and alleged that the interest of Lewis in the land at the time of the sale was incumbered by various liens. The answer also included a cross-bill (in which Lewis, the corporation, and one James A. Howe were named defendants), which set up that the cross-complainants (defendants in the bill) and Lewis in 1920 bought of Howe a stone quarry for $110,000 and the assumption of a mortgage; that $25,000 was paid in cash, it being procured on the promissory note for that amount mentioned in the bill; that the deed to the quarry was taken in the name of Chequest Stone Corporation for and on behalf of the cross-complainants and Lewis; that the corporation issued its stock in the amount of $450,000 to the cross-complainants and Lewis, who in turn assigned it to Howe as collateral security for the payment of the balance of the purchase price; that payments had been made upon the balance of the purchase price; that cross-complainants did not know the amount still due to Howe, but that cross-complainants and Lewis were liable therefor; that cross-complainants were entitled to a bill of discovery and an accounting in relation to the trust with which Howe was clothed. The prayer of the cross-bill was that Howe and the corporation be held to an accounting; that a determination be had of the amounts due each of the cross-complainants from each of the defendants; that contribution be had between the various parties.

Motion was made by Lewis to dismiss the cross-bill, on the ground that the matters set up and the relief demanded were not germane to the cause of action set up in the bill, and that the cross-bill stated no cause of action in equity. Eventually the cross-bill was dismissed by the court.

[2] It appears from the record that the whole cause was referred to a special master; that evidence was taken by him, and a report made; that exceptions were taken by defendants to the report. However, the record does not contain either the report or the findings of the special master, or the exceptions taken thereto. Nor is there any certificate of the special master stating what evidence was before him. Orderly procedure required these matters to be contained in the record.

See Barber Asphalt Paving Co. v. Standard Asphalt & Rubber Co., 48 S. Ct. 183, 72 L. Ed. ——, opinion filed January 3, 1928. The importance of having the findings of the special master incorporated in the record becomes apparent when the decree of the court below is considered in connection with the assignments of error. The decree contains the following:

"The court further finds that the findings of fact and each of them in said report of the special master herein are correct, and they are adopted, confirmed, and found as the facts by the court, and the exceptions and each of them of the defendants to the report of the special master should be and they are overruled."

[3] The third and fourth assignments of error are as follows:

"The court erred: * * * (3) In finding that the facts found in the report of the special master are correct.

"(4) In adopting, confirming, and finding as facts by the court, the facts found by the special master and in overruling the exceptions of the defendants filed to the report of the special master."

In view of the state of the record, such assignments of error are futile.

There are several questions, however, which may properly be considered upon the present record: First, was it necessary to plead and prove that the Chequest Stone Corporation, the maker of the note, was insolvent, in order to maintain the suit for contribution?

The general rule seems to be—although there are exceptions—that, if a surety brings a suit in equity against his cosureties for contribution, he should allege and prove the insolvency of the principal; but, if he brings an action at law, the insolvency of the principal need not be alleged or proved.

In Pomeroy's Equitable Remedies (3d Ed.) § 917, this statement is made:

"In cases of cosuretyship, as a further condition to recovery, some courts insist that the party asking contribution shall first exhaust his remedies against the principal debtor, or show that the latter is insolvent. This is considered unnecessary, however, in most states."

In 32 Cyc. 294, 295, is found the statement:

"* * * And in many cases it is held that, in order to proceed against his cosurety in equity for contribution, a surety must either show that he has proceeded against the principal with due diligence but unsuccess-

fully, or that the latter is insolvent, and that therefore an action against him would be fruitless."

Pingrey on Suretyship and Guaranty (2d Ed.) § 197, states the rule as follows:

"At law, while there is a conflict of authority upon the subject, the weight of authority seems to be that insolvency of the principal debtor need not be averred in order to establish the right of contribution; * * * but equity, to prevent a multiplicity of suits and avoid a circuity of remedies, will compel the surety who has paid the debt to recover the same from the principal if he is solvent, on the theory that his co-surety, in equity, may be compelled to contribute in excess of his implied agreement; so in that forum he cannot be compelled to respond, at all, if the principal is solvent; hence the necessity of alleging the insolvency of the principal as a condition precedent to the right of contribution in equity. Many decisions, though not all, support this doctrine, and hold that it is incumbent upon the plaintiff in a suit in equity to allege the insolvency of the principal as a condition precedent to the enforcement of contribution of cosureties."

There are numerous authorities sustaining this distinction. See 29 A. L. R. 274, note, where the cases are collected both at law and in equity. The only case in the federal courts to which our attention has been called or which we have found (White v. Perrin, 29 Fed. Cas. No. 17555) also supports the same view.

[4] Conceding, but without deciding, that the bill should have alleged the insolvency of the Chequest Stone Corporation, yet, in view of the record, the defect is immaterial. It has long been the law that such a defect in the bill will be disregarded where the objection is not taken in limine and where the whole record shows such insolvency. In the early case of Dering v. Earl of Winchelsea, 1 Cox's Cases in Equity 318, Lord Chief Baron Eyre, delivering the opinion of the court, said (page 323):

"The objection in point of form, which I before mentioned, is, that the bill cannot be sustained, inasmuch as it has not charged the insolvency of the principal debtor, and that such a charge is absolutely necessary. As a question of form, it ought to have been brought on by demurrer; but, in substance, the insolvency of Mr. Dering may be collected from the whole proceedings, which strongly imply it; for the plaintiff appears to have submitted to the judgment, and the defend-ants have made their defense on other grounds."

In the case at bar, the following pertinent facts appear in the record which have a bearing upon the question of insolvency of the Chequest Stone Corporation: The note made by the corporation was indorsed by officers and stockholders of the corporation, eleven in number; the note was not paid when due; eight of the indorsers made payments on the note without suit; the action was brought for the balance against the corporation and three of the indorsers; judgment was obtained against all the defendants in that suit, including the corporation; the defendants in the present suit became owners of that judgment; execution on the judgment was taken out against all the defendants in that suit; nothing was levied upon belonging to the corporation, but levy was made on land of Lewis; defendants on the trial made no attempt to show that the corporation was solvent, but based their defense on other grounds. In view of these facts, we think it sufficiently appears that the Chequest Stone Corporation was insolvent, and that the question of pleading became immaterial.

[5, 6] Another question which arises upon the record is whether the cross-bill was rightfully dismissed. We think the dismissal was proper for the following reasons: The controversy sought to be raised by the cross-bill was not one between the cross-complainants and appellee Lewis alone, but involved other parties, viz. Howe and the Chequest Stone Corporation, neither of whom was a party to the original bill. This in itself would not necessarily be fatal, since New Equity Rule 30 provides for the bringing in of new parties necessary to the complete determination of a counterclaim. But that provision of the rule presupposes the existence of a counterclaim against the plaintiff and the proper statement of it in the answer. In the present case, however, no cause of action was stated by the cross-complainants against Lewis. The cross-bill simply alleged that theretofore a certain contract of purchase had been entered into in which Howe, the Chequest Stone Corporation, the cross-complainants, and Lewis were all interested; that certain payments had been made to Howe in connection with the purchase, and that he held certain property as collateral to secure the performance of the contract; that cross-complainants were entitled to a general accounting; that upon such an accounting it *might* be determined that cross-complainants had a right of contribution against

Lewis. There was no allegation in the cross-bill that cross-complainants or either of them had paid to Howe or to any one else anything whatever in discharge of an obligation that was common to cross-complainants and Lewis. In other words, there was no cause of action for contribution stated against Lewis. Under such circumstances the cross-bill was properly dismissed.

[7] There remains the question whether there was any evidence supporting the finding of the court that Lewis had paid upon the judgment, rendered upon the $25,000 note, and in satisfaction thereof, the sum of $7,629.35. As stated above, this was the amount bid by Townsend on behalf of himself and the other defendants for the land of Lewis at the execution sale, and was the exact amount of the judgment with interest and costs obtained by the bank against Lewis in the suit on the note. But it is claimed by defendants that the land was not worth that amount, because of prior incumbrances; and that as a matter of law Lewis should be held to have contributed toward the payment of the note only the value of the land over and above the prior incumbrances. The answer to this contention is that the value of what Townsend bought at the execution sale was fixed by himself by his bid, which was accepted, and that this was the amount which Lewis would have had to pay in order to redeem. In the absence of fraud or irregularity, the price bid for land by a purchaser at an execution sale fixes the value of the land as between the parties. Leach v. People's Sav. Bank of Grand Mound, 200 Iowa, 954, 205 N. W. 790; Aronson v. Hoskins, 201 Iowa, 389, 207 N. W. 389; Crawford v. Foreman, 127 Iowa, 661, 103 N. W. 1000.

[8, 9] Furthermore, the general rule is that the doctrine of caveat emptor applies to sales upon execution. 23 C. J. 746. This rule is recognized by the courts of Iowa. Todd, Pollock & Granger v. Johnson, 51 Iowa, 192, 1 N. W. 498. But it is also held that a "purchaser will ordinarily be protected against outstanding equities of which he had no notice, actual or constructive, before the sale." Rippe v. Badger, 125 Iowa, 725, 101 N. W. 642, 106 Am. St. Rep. 336.

[10] While the testimony of Townsend is to the effect that he did not know of any prior incumbrance on the land at the time he made the bid; yet there is no showing that he made any effort to ascertain the condition of the title before the sale; nor is there any showing that, after having discovered the existence of incumbrances, he made any effort to have the sale set aside. Under all the circumstances, we think that defendants are estopped to deny that Lewis paid on the $25,000 note the amount of the bid made for his land by Townsend at the execution sale.

In the foregoing discussion we have assumed that the circumstances disclosed rendered the indorsements joint, and that the doctrine of contribution applied. We do not understand that this is controverted. See Kessel v. Murray, 197 Iowa, 17, 196 N. W. 591, 33 A. L. R. 1346; Keefer v. Valentine, 199 Iowa, 1337, 203 N. W. 787; Lee v. Boykin, 114 S. C. 480, 103 S. E. 777, 11 A. L. R. 1328, and note.

The conclusions of the court below were, in our opinion, correct. The decree is therefore affirmed.