UNION CENTRAL LIFE INSURANCE COMPANY, Appellee, v.
H. B. BRACEWELL et al., Appellants.

No. 39874.

FEBRUARY 11, 1930.

*Bracewell, Murrow & Poston,* for appellants.

*T. W. Miles* and *Ed. R. Brown,* for appellee.

KINDIG, J.—In its petition, the plaintiff-appellee, Union Central Life Insurance Company, seeks alternative relief against the defendant-appellants, H. B. Bracewell, R. L. Wolf, and C. H. Loughman. It asks for judgment in the sum of $992.15, or, in lieu thereof, demands the reconstruction of a building on certain real estate in Wayne County. This realty was formerly owned by a Mr. Crosby. Later, he conveyed the property to the Wayne County State Bank, of Corydon, but now it belongs to the appellee Insurance Company. Title thereto was obtained through the foreclosure of a mortgage placed on the premises by Crosby and held by the appellee Insurance Company, as mortgagee. Purchase was made by the latter at its own foreclosure sale. Before the foreclosure, and while said real estate mortgage was held by appellee as the mortgagee, a

fire occurred, in September, 1926, which totally or partially destroyed the dwelling house on the premises. A policy (in an insurance company not a party to, or interested in, this controversy) covered the fire loss, and accordingly, on October 4, 1926, a draft in the sum of $992.15 in settlement thereof was made, payable to the Wayne County State Bank, the then title holder, and the appellee, at that time the mortgagee. Parenthetically, it is noted that this transaction occurred before the foreclosure.

After the delivery of the insurance draft, an agreement was entered into between the appellee Insurance Company and the Wayne County State Bank, under which the proceeds were deposited in the bank, with the understanding that the same would be used by that institution for the purpose of reconstructing the dwelling house. Accordingly, the money was placed in the bank, about October 11, 1926. On October 20, 1926, however, the Wayne County State Bank failed, and the state banking department took charge thereof, for liquidation purposes. Hence, the dwelling house was not constructed, in accordance with the aforesaid agreement.

During January, 1927, the defendant-appellee, Corydon State Bank, a new institution, was organized, and, on or about January 24, 1927, opened its doors for business at Corydon. As thus organized, the new bank assumed 75 per cent of the deposit liability growing out of the old Wayne County State Bank. So, to indemnify the new bank for that responsibility, certain assets of the old institution were properly assigned and delivered. For this procedure the court gave its sanction and approval. Among the liabilities thus incurred by the, new Corydon State Bank was 75 per cent ($744.11) of the insurance fund aforesaid, designated on the records as the "Crosby house" deposit. Recognizing its indebtedness therefor, the Corydon State Bank issued four certificates of deposit, payable respectively after date as follows: 6, 12, 18, and 24 months. These certificates were designated the "Crosby house" fund, as the account previously had been named.

Thus the certificates were retained until delivered to the trustees, appellants, as hereinafter explained. Those appellants, trustees, were appointed for the purpose of taking over the Wayne County State Bank assets not received by the new

Corydon State Bank, and therewith liquidating, as far as possible, the remaining 25 per cent of the former bank's deposit liabilities. While liquidation was thus proceeding, the appellee Insurance Company knew of the "Crosby house" account, but made no claim of any kind therefor. The foreclosure proceedings above mentioned were commenced by the appellee Insurance Company in March, 1927, against Crosbys, the Wayne County State Bank, and the appellants, trustees. At no time, however, was the old bank's receiver a party to that proceeding. Said foreclosure action contemplated the real estate only. No reference whatever was in any way made to a claim, fund, or account in the possession of either bank or the appellants, trustees. Notwithstanding the fact that the appellants, trustees, and others were made parties to the foreclosure action, the only recital in the petition concerning them was that they had some claim on the real estate, but that the same was inferior to that of the appellee Insurance Company; and in the prayer of that petition, the relief sought was simply a foreclosure of the mortgage on the real estate, without any mention whatever concerning the insurance fund or the Crosby house. A judgment and decree of foreclosure was duly entered, March 31, 1927, and on May 5th thereafter, the land was sold on special execution to the appellee Insurance Company, which bid "the full amount of the judgment, interest, and costs." Thereafter, a sheriff's certificate was legally issued to the appellee Insurance Company, as the purchaser at the sheriff's sale.

When the sale was had and purchase made, the house in question was not upon the premises. Putting the thought in another way, the appellee Insurance Company purchased a farm without this particular building. Following the statutory period of redemption, a deed under the sheriff's certificate was issued to the appellee Insurance Company, and thereunder that institution is now the owner of this land.

Several months after the appellee Insurance Company had, in the manner and way aforesaid, purchased the farm at foreclosure sale, the appellee Corydon State Bank, on January 26, 1928, delivered its four certificates aforesaid, covering 75 per cent of the "Crosby house" fund, to the appellants, trustees, who received the same for the purposes of liquidating the pre-

viously mentioned 25 per cent of the old Wayne County State Bank deposit obligations. It is here repeated that the Wayne County State Bank owned the legal title to the land at the time of the foreclosure.

Appellee, as the present owner of the land, commenced this action on June 29, 1928, seeking the following relief: First, that the appellants, trustees, be compelled to convert the fund covered by the agreement into a dwelling house; or second, that said appellants be required to pay said proceeds to this appellee. Such latter redress was granted by the district court. Corydon State Bank, however, was relieved from liability, and the appellee Insurance Company's petition as to it was dismissed. Consequently, that bank is not concerned in this appeal.

Complaining about the action of the district court in so far as it affects them, the appellants are asking a reversal. Fundamentally, their proposition is that the appellee Insurance Company became a purchaser at the foreclosure sale, bought the land for the full amount of the judgment, interest, and costs, and consequently their debt is paid in full. Because thereof, the appellants maintain that the before-mentioned insurance fund remained the property of the defunct Wayne County State Bank, due to the fact that it was a title holder when the foreclosure took place.

Supporting the judgment and decree of the district court, the appellee Insurance Company predicates its title to said fund upon the real estate mortgage and the contract relating to the insurance money. Continuing its argument, the appellee Insurance Company insists that it is not seeking to enlarge its recovery, but rather, here demands that it receive all of the security covered by the mortgage and purchased by it at the execution sale. That, in a general way, is a statement of the controversy.

Manifestly, the so-called agreement was entered into by the appellee Insurance Company, as mortgagee, for security purposes. A fire had occurred, which reduced appellee's security to that extent, and accordingly it was protected under the insurance policy, "as its interest might appear." Underlying the contract relating to this insurance was an endeavor on the part of appellee to protect its security. Obviously, at that time the appellee had no other interest in the land.

Therefore, the contract's basis was security, and through the agreement, a means was devised by which realization could be had upon the full protection originally furnished. Armed with that security, appellee was privileged to apply the same upon its debt. If, on the other hand, it chose to appropriate the land only, such was its right. But whatever security remained, after the debt was satisfied out of the land, reverted to the mortgagor or landowner, free from further incumbrance. Credit on the security indebtedness was not given the debtor by the appellee Insurance Company, in consideration for the Crosby deposit contract. Even though such deposit contract was in existence, the original debt remained the same. Wherefore, the Crosby deposit continued to be the property of the Wayne County State Bank, the then owner of the land, subject to the appellee Insurance Company's lien. Without doubt, the appellee Insurance Company could have foreclosed on its entire security, including the Crosby deposit account. Having that right, however, the appellee waived it, and elected to satisfy its claim from the real estate alone. So, contrary to its present contention, this appellee did have the benefit of the entire security, including the Crosby deposit account, but voluntarily waived that part of it. When that portion of the security was thus abandoned, the contract which covered it became inoperative, because the purpose for the agreement no longer existed.

After judgment was obtained for the entire debt, together with interest and costs at the foreclosure proceeding, the appellee, at the execution sale thereunder, bid the full amount of its claim for the land. This bid represented the value of that land for security purposes. *Leach v. Peoples Sav. Bank of Grand Mound,* 200 Iowa 954; *Fellers v. Sanders,* 202 Iowa 503; *Equitable Life Ins. Co. v. Rood,* 205 Iowa 1273. Through the foreclosure purchase, appellee theoretically paid to the sheriff the amount of the bid, and that officer delivered the proceeds thereof back to it, in satisfaction of the existing indebtedness. *Silver v. Wickfield Farms,* 209 Iowa 856. See, also, *Reyelts v. Feucht,* 206 Iowa 1326 (local citation 1332).

By thus bidding, purchasing, and paying for the property, appellee's debt became paid and satisfied in full, and it is not entitled to further recovery here. *Corbin v. Reed,* 43 Iowa 459;

*Todd, Pollock & Granger v. Johnson,* 51 Iowa 192; *Leach v. Peoples Sav. Bank of Grand Mound* (200 Iowa 954), supra; *Silver v. Wickfield Farms* (209 Iowa 856), supra. See, also, *Schnuettgen v. Mathewson,* 207 Iowa 294; *McDonald v. Magirl,* 97 Iowa 677; *Dickinson v. White,* 64 Iowa 708; *Stephany v. More,* 82 N. J. Law 186 (82 Atl. 731); *Harvison v. Griffin,* 32 N. D. 188 (155 N. W. 655). Concerning this subject, we said, in *Corbin v. Reed* (43 Iowa 459), supra:

"The plaintiff bid in the property at the sheriff's sale, for the amount of the debt, interest, and costs. He took the property in its then condition for the amount of his claim. Having satisfied his claim by bidding in property, he has no right to recover more."

Likewise, in *Todd, Pollock & Granger v. Johnson* (51 Iowa 192), supra, we declared, on page 196:

"* * * The plaintiffs obtained a judgment against the defendants for the full amount secured by the mortgage. They purchased the mortgaged property at the foreclosure sale for the amount of the debt, interest, and costs, as we understand the record before us. * * * The plaintiffs have had judgment against the defendants for every dollar that was secured by the mortgage. The judgment has been satisfied in full by a sale of the mortgaged property. Unless the sale and satisfaction shall be set aside, they have no claim whatever against the defendants. The debt which the mortgage secured has been paid, and no right of action upon the mortgage remains."

With the debt satisfied from a portion of the security contracted therefor, the mortgagors' and the subsequent landowners' whole obligation was completely performed. The only agreement ever existing was with the appellee, as mortgagee. It now is acting and seeking to recover in another capacity,— that of owner, as distinguished from the previous relationship. Both the contract and the mortgage covenant in the premises had no existence except for security purposes, and those agreements are now entirely disposed of and ended, because all the security needed has been appropriated, to satisfy the debt. Performance in that manner and way has entirely absolved the original obligors from any further liability or duty

under the security contracts. No reservation was made by the appellee Insurance Company, when placing its bid for the land, nor was attempt made to in any way include the "Crosby house" deposit account. We do not here determine that any such exception could have been made; but, for the purpose of emphasis, attention is called to the absence thereof. Resultantly, under the facts here disclosed, the appellee Insurance Company obtained its full bargain, and with that it must be satisfied.

Necessarily, then, recovery by the appellee, under the circumstances, should not have been permitted; for it is no longer a security holder on, but an owner of, the foreclosed land. Reliance is made by appellee upon two cases. They are *Bartlett v. Iowa State Ins. Co.*, 77 Iowa 86, and *In re Hackbart*, 203 Iowa 763. A review of those decisions will readily disclose the difference between the facts there and those involved here. For instance, in the *Bartlett* case, a wife who formerly was a mortgagee on real estate held by her husband sought to recover for a fire loss. At the time suit was brought, she had procured title from her husband, and satisfied the mortgage. Objection was made because she was no longer the mortgagee, and therefore had no interest in the premises. Upon that subject, this court said:

"But the defendant insists that plaintiff had no right to maintain the action, because there was no mortgage, it having been paid and satisfied; but the evidence shows that, when the mortgage was settled between the parties [the husband, mortgagor, and wife, mortgagee], plaintiff [the wife] took the policy and the burned property for the debt."

Clearly, then, the insurance loss was a part of the consideration paid for the land. An obvious distinction appears.

Equally clear is the distinction between the *Hackbart* case, supra, and the present controversy. There the fire occurred after the foreclosure sale, during the period of redemption. In order to avoid confusion, distinction is here made between this controversy and the cases where the fire loss occurs after the foreclosure sale, but during the redemption period. Under the latter instance, the purchaser at the foreclosure sale bid for property including the improvement, and consequently is

entitled to insurance money representing fire loss to buildings thereon during that period. Otherwise, he would not have his bargain. *Boyce v. Farmers' Mut. Ins. Assn.*, 209 Iowa 11; *Heins v. Wicke*, 102 Iowa 396; *Johnson v. Northern Min. Land & Inv. Co.*, 168 Iowa 340. Here, however, the appellee obtained what it bid and paid for. The *Bartlett* and *Hackbart* cases, therefore, are of no avail as support for appellee's contentions.

Whether, in the event appellee had bid less than its full judgment, and permitted a deficiency to remain, the Crosby house deposit account could have been appropriated to satisfy the same, under execution, we do not now suggest or decide.

Wherefore, the judgment and decree of the district court should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.