DON E. NEIMAN, Trustee, Appellee, v. HAWKEYE SECURITIES FIRE INSURANCE COMPANY, Appellant.

SEPTEMBER 20, 1927.

REHEARING DENIED JANUARY 20, 1928.

120

*Sampson & Dillon*, for appellant.

*Stipp, Perry, Bannister & Starzinger*, for appellee.

DE GRAFF, J.—On March 18, 1924, in consideration of the sum of $33.40, paid to the defendant insurance company by the Electric Bakery Company, a policy of insurance was executed and delivered by said defendant to said company, covering its personal property, and insuring for one year the said Electric Bakery Company against all direct loss or damage by fire, to the extent of $2,500, on the bakery machinery, fixtures, supplies, and equipment contained in or attached to a certain building at 934 Sixth Avenue, city of Des Moines. The policy is in conformity to the standard form prescribed by the Code of Iowa.

A coinsurance and reduced-rate clause was, upon the request of the insured, on March 19, 1924, attached to the policy, and signed by the Electric Bakery Company and by the Des Moines general agents of the insurer, Willcox, Howell, Hopkins & Mulock.

It appears that the financial condition of the bakery company became somewhat precarious during the early part of July, 1924, and notices were sent to its creditors by the manager of the company, requesting them to attend a meeting of creditors, July 7, 1924. This meeting was held, and attended by creditors representing about 75 per cent of the outstanding claims. A creditors' committee was appointed, to supervise the operation of the business until an audit was made. At this time, the officers of the bakery company were requested to have prepared a

trust deed and to make a selection of a trustee. A trust deed was executed, and accepted on the 21st day of July, 1924. The deed was signed by the president and secretary of the bakery company and by Don E. Neiman, as trustee, named in said deed of trust. This deed conveyed, transferred, and assigned unto the said trustee all of the assets of the Electric Bakery Company "of any kind or nature whatsoever, more particularly of the goods, wares, merchandise, fixtures, equipment, and buildings located at 934 Sixth Avenue, city of Des Moines." On the date of the execution of the trust deed, all of the property of the bakery company was turned over to Mr. Neiman, as trustee, including the fire insurance policies; and thereupon, and pursuant to the terms of the deed, all of the property of the bakery company passed to the trustee, who assumed complete management of the affairs of the company, employed the help, and directed the activities of said company. In brief, on and after July 21, 1924, the Electric Bakery Company, as a corporation, ceased to function, although the corporation was not dissolved or its franchise terminated.

The fire loss in question, which was total, and was in the sum of $39,271.75, occurred September 21, 1924.

Plaintiff alleges in the petition that:

"On or about the 21st day of July, 1924, the defendant was informed of the fact that a trust deed had been executed by the said Electric Bakery Company to this plaintiff; that thereafter, with knowledge of said transfer, the defendant * * * retained the premium, and did not cancel said policy nor return said premium, but through its agent, Sam Redstone, assured plaintiff's representatives that plaintiff's interests were fully protected by said policy as written, * * * and requested that said insurance be made payable, in case of loss, to this plaintiff, as trustee for the Electric Bakery Company." The defendant, in answer, admits the execution of the policy of insurance, but expressly denies that it was, on the 21st day of July, 1924, or at any other time thereafter, informed that said Electric Bakery Company had executed a trust deed, as alleged in plaintiff's petition, and expressly denies that it had any agent or representative by the name of Samuel Redstone, authorized or empowered to say to the Electric Bakery Company or to the plaintiff herein, or either of them, by any representation, statement, or other-

wise, that the interests of the said trustee were fully protected under the said policy.

Defendant further expressly denies that at any time it consented to the assignment of the said policy of insurance by the Electric Bakery Company to Don E. Neiman, as trustee, or that it at any time had knowledge of said assignment, or that any agent had any knowledge of said assignment. It is upon this issue that we are primarily concerned on this appeal.

Section 9018, Code of 1924 (Section 1758-b, Code Supplement, 1913), provides:

"IV. Unless otherwise provided by agreement of this company this policy shall be void: * * * f. If any change other than by death of the insured whether by legal proceedings, judgment, voluntary act of the insured or otherwise, take place in the interest, title, possession, or use of the subject of insurance, if such change in the possession or use makes the risk more hazardous; or * * * i. If this policy be assigned before loss."

It is conclusively shown that the defendant insurance company did not, by writing, consent to or acquiesce in the transfer or delivery of the insured property or to the assignment of the policy in suit. We are, therefore, not concerned with a new agreement created by the mutual consent of the parties. The contract of insurance, as made, was not modified. There was no new mind-meeting as to the quoted policy provisions, supra. See *Hawkeye Clay Works v. Globe & Rutgers Fire Ins. Co.*, 202 Iowa 1270. Mere notice does not create a new contract. The rights of the plaintiff must be determined under the terms of the contract in evidence, unless the plea of waiver or estoppel is available to the plaintiff.

It is a well settled principle of insurance law that, although by the terms of the policy it is provided that a change of ownership of the insured property will defeat the rights of the insured or an assignee of the policy, the insurer may consent to carry the risk, notwithstanding the change of title, and by acts and conduct on its part, through its duly constituted agent, may waive such provision or be estopped by its acts and conduct. In other words, if, with knowledge of the facts constituting a forfeiture of the policy, the insurer continues to treat the contract as a binding contract, and induces the insured to act in that belief, the forfeiture is waived. See *Neiman v. City of New*

*York Ins. Co.*, 202 Iowa 1172, with cases cited. It is quite obvious from the record that the instant policy contract was assigned by the insured before the loss, and that there was no express consent on the part of the insurer to the assignment.

The determination of this appeal must be found in the answers to certain vital questions. First: Who was Sam Redstone? Second: What authority and power did he have as an agent? Third: Is the notice or knowledge which came to Sam Redstone in the instant matter imputable to the defendant insurance company?

It is undisputed that the firm of Willcox, Howell, Hopkins & Mulock was the general agent of the defendant insurance company in the city of Des Moines, and that Sam Redstone was an insurance solicitor, employed and paid by the general agent. It is undisputed that the securing of the business in the instant matter was credited to Sam Redstone on the books of the general agent. It is undisputed that Redstone did not issue or sign policies, and had no authority to issue policies or to sign his name to any policy or indorsement or rider thereon. He was, in the strictest sense, a soliciting agent for the agency of Willcox, Howell, Hopkins & Mulock. He was paid a salary by the general agent. He was not employed by the defendant insurance company.

Was Redstone an agent of the insurance company, within the definition of "agent" under statutory provision? Section 9004, Code of 1924, reads as follows:

"Any officer, agent, or representative of an insurance company doing business in this state who may solicit insurance, procure applications, issue policies, adjust losses, or transact the business generally of such companies, shall be held to be the agent of such insurance company with authority to transact all business within the scope of his employment, anything in the application, policy, contract, by-laws, or articles of incorporation of such company to the contrary notwithstanding."

It is clear that Sam Redstone was authorized by the general agent of the defendant to do certain things prescribed by this statutory definition. He was a licensed agent. He was authorized to solicit insurance and procure applications. The record is silent as to any other authority, but, on the contrary, negatives any other authority. The question of agency, under such cir-

cumstances, must be answered with respect to the business intrusted to him. Redstone did solicit the insurance in question, and got it. Through him the premium was paid to the general agent, and the policy, after its execution by the general agent, was delivered to the insured by Redstone. This is what he did.

Did these acts make Redstone the insurance agency—the *alter ego*—of the recording agent? In establishing the authority of an insurance agent, a court cannot adopt the statutory definition as the legal yardstick. Nor can it rely wholly upon the terms of the employment or the terms of.the policies which are procured for the applicant. These matters, of course, are to be taken into consideration, but the record facts which disclose the things which the agent did do, and the extent and nature of the business which the agent is permitted to do, are of major importance. The real nub of this controversy involves the notice or knowledge which Redstone had of the change of ownership of the insured property, and. whether or not his notice or knowledge, in the light of his authority, is to be imputed to the insurer and binding upon the insurer.

Let us now turn to the record evidence bearing on the pleaded waiver. Mr. Ed Danenbaum was the officer (treasurer) of the Electric Bakery Company who was. solicited in the first instance by Redstone, and who purchased, through Redstone, the insurance in question. A few days after the sale and transfer of the insured property to Neiman, as trustee, Danenbaum had a casual conversation with Redstone, at the office of the Electric Bakery Company, and it is the claim of the plaintiff that Redstone was requested to advise Danenbaum whether it was necessary to do anything in connection with the policy of fire insurance in question. The record is as follows:

"Q. State what you told him [Redstone] about the transfer of your assets. A. I told him that we had transferred everything to the creditors' committee, and asked him if there was any necessity to make any changes in the insurance policies; and he said that he didn't know, but he would take it up with Willcox-Howell, and if there was any necessity, he would make the change. Q. State whether or not you said to him that you—did not say to him you wanted him to do whatever was necessary to keep your policy in force. A. I asked him to do whatever was necessary to keep the policy in force. Q. State whether or

not he said he would do that. A. He said he would take care of it."

The trustee testified that he never had any communication from Redstone or the Willcox-Howell Agency regarding this fire or this policy, and that he did nothing in reference to this fire insurance policy until after the fire occurred. He then did, on the 12th day of November, 1924, send proof of loss to the defendant insurance company. Redstone, at the time of the trial, was suffering from a stroke, and was unable to be present as a witness.

Unless it may be said, therefore, that Redstone was an agent with power and authority to do the thing which he said he would do, to wit, "do whatever was necessary to keep the policy in force," and that the notice of transfer given him by Danenbaum was notice to the insurer, the defendant's motion for a directed verdict should have been sustained. The waiver is predicated on the quoted conversation.

Without further comment, we reach the conclusion that Redstone was not the agent of the insurer in the sense that he had authority, right, or power to waive any of the terms or conditions of the policy in suit. It is undisputed that he had no authority to issue policies or to execute indorsements or riders thereon. He had no authority to "transact the business generally for the company." It may also be stated that there is no evidence that either the general agent or the insurance company through any other agent or person had notice or knowledge of the transfer of the insured property or that the policy had been assigned, as an asset of the Electric Bakery Company's, to the trustee, under the terms of the trust deed; and at this point it may be said that the policy was not specifically referred to in the trust agreement, nor was there any written assignment of this policy to the trustee until the 14th day of February, 1925, about eight months after the fire loss.

It is fundamental that an insurance policy cannot be assigned by the insured, before loss, to a stranger, without the consent of the insurer. *Bartling v. German Mut. L. & T. Ins. Co.*, 154 Iowa 335. An insurance policy is a personal contract, and the insurance company issuing a policy has the right to say whom it will insure. An insurance policy does not run with the land, or pass to the purchaser by a sale of the property insured.

See, also, *New England L. & Tr. Co. v. Kenneally*, 38 Neb. 895 (57 N. W. 759).

The instant policy of insurance was delivered to the trustee. It was a manual delivery. The trustee exercised control over it then and ever after. The trustee asked Danenbaum if he had had the policy transferred to the trustee, to which Danenbaum replied: "Mr. Redstone had looked after that." The trustee had told Mr. Kauffman, the former secretary of the Electric Bakery Company, who was then acting as manager of the company, under the appointment of the trustee, to take care of the insurance policies and see that the companies were notified of the execution of the trust deed. This conversation happened on the same day that the trust deed was executed. In fact, the policies were turned over to Mr. Kauffman. He was explicitly told by the trustee to notify the insurance company "about the transfer of the insurance." Kauffman did nothing. Neiman did nothing. Danenbaum, who, after the execution of the trust deed, had nothing to do with the assets of the bakery company, casually met Redstone, and asked him a legal question: whether there was any necessity to make any changes in the insurance policies. Redstone did not know, but he volunteered to state that he would take it up with Willcox-Howell, and find out whether there was any necessity to make a change. Both parties were bound equally with knowledge of the law. Redstone, as an agent, however viewed as to his authority, was not the agent of the insurer to give legal advice, and he owed no such duty to the insured. Redstone, furthermore, as an agent, had no authority to make the promised change if he finally determined that the same was necessary, and the insurance company was not legally bound to make the change upon the request of anybody.

In the light of the entire record, we reach the conclusion that the plaintiff has failed to establish a case. The judgment entered is—*Reversed.*

EVANS, C. J., and STEVENS, ALBERT, MORLING, and KINDIG, JJ., concur.