LARSEN & SON et al., Appellees, v. RETAIL MERCHANTS MUTUAL INSURANCE COMPANY, Appellant.

No. 40820.

944

Graham & Graham, G. C. Dalton, for appellant.

T. F. Mantz, Chas. S. White, for appellees.

ALBERT, J.—The first question of importance in the case involves the question of an alleged plea in abatement.

The destruction of the property insured occurred August 10, 1929. It is claimed the proof of loss was waived on September 16, 1929. This claim, however, is in dispute and for the purpose of determining the question involving the plea in abatement, we will assume that proof of loss was waived on said latter named date.

This suit was commenced on October 12, 1929, in the district court of Audubon County, Iowa. The defendant filed answer February 19, 1930, in which no reference was made to an abatement, nor was there any plea of abatement therein. In the intermediate time, the plaintiffs had twice amended their petition, and on the 19th day of February, 1930, they filed a reply to the answer of the defendant theretofore filed. Thus the issues were made.

Later, on May 3, 1930, the defendant filed an amendment to its answer pleading that plaintiffs' action was prematurely brought because at the time the same was filed, no cause of action had accrued in favor of the plaintiff, or any of the plaintiffs, to this action in any capacity. A reference to the provisions of the policy was made a part of this plea, and it is alleged that since the terms of the policy had not been complied with by plaintiff or plaintiffs, this action would not lie.

The policy issued in this case contained the following provision: "The sum for which this company is liable pursuant to this policy shall be payable forty days after due notice and

proofs of loss have been received by this company in accordance with law.''

Section 8986, Code, 1927, after providing for notice of loss and proof thereof, continues: ''and no action for such loss shall be begun within forty days after such notice and proofs have been given to the company.''

It will be noticed, therefore, that the policy provided that when the loss was payable, it fixed the time at forty days after the proper filing of notice and proof of loss, and the statute quoted prohibits the bringing of an action during this forty day period. As before noted, the defendant in its amended answer alleged that plaintiffs' action was prematurely brought in that no cause of action had accrued in their favor. It goes without saying, therefore, that this action was brought before the expiration of the forty day period, and by reason thereof, defendant alleges ''this action will not lie.''

In the case of Blood v. The Hawkeye Ins. Co., 103 Iowa 728, we had a very similar situation, and after having reviewed our cases, we held that the action was prematurely brought and reversed the case. We see no difference in the fact situation in that case from that in the instant case, so far as the legal question is concerned.

But, appellees insist that by reason of the holdings of this court in Thompson v. Yousling, 196 Iowa 363, and Smith v. City of Davenport, 198 Iowa 1295, they should not be penalized for having brought their action prematurely. In the latter case we quoted the following from the former case:

'' 'The old rule that an action prematurely brought must in any event be abated on that ground has become obsolete. The prevailing present rule is that, if only time is wanting to mature the action, and if such time has elapsed when an issue is presented and tried upon the merits, the action need not be abated.' ''

The conclusion in the first case was that although the action were prematurely brought, this question was not raised until after the time when the action could have been brought.

Plaintiff may amend or substitute his original petition after the time limit has expired, and thereupon continue with the trial of his case on the merits and the action will not be abated.

Abatement is purely dilatory and if sustained, only means the commencement of another action. If this abatement had been sustained, it would simply mean that this action would have been dismissed on the 3d day of May when the plea was filed, and the plaintiffs could commence another action on the 4th day of May. At that time the forty day limitation had long since expired. This, of course, would be a useless proceeding and nothing in reality would be accomplished thereby except to delay the determination of the questions involved. We are disposed to hold that the pronouncements made in the cases of Thompson v. Yousling and Smith v. City of Davenport, supra, determine this situation, and we therefore give no further consideration to this question.

The next question discussed is whether or not the proper notice and proof of loss were given to the Company.

After the fire, the attorney for the plaintiffs wrote the defendant and requested a blank to make out proof of loss. On September 16, 1929, the company replied as follows:

"We acknowledge receipt of your request for blank proof of loss, that apparently you desire to use to make claim for loss for N. Larsen of Brayton, but please understand that the furnishing of this proof would be superfluous, from the fact that we find that he did not own the stock at the time of the fire, he having sold it and received check for same, so of course we had no insurance with the party who bought it. Hence there was no obligation of this company under the circumstances with either Mr. Larsen or the purchaser, as Mr. Larsen has already received cash for his stock for purchase price, hence relieving this company from any legal liability whatever."

▇ This answer of the Company reveals, first, that they knew of the Larsen loss, and no other construction can be placed upon it than they were then specifically refusing to pay the same and denying liability. It has long been the rule of this State that where an insurance company has knowledge of the destruction of property by fire, and denies liability, they thereby waive proof of loss. Green v. Des Moines Fire Ins. Co., 84 Iowa 135; Scott v. Security Fire Ins. Co., 98 Iowa 67; Ruthven Bros. v. American Fire Ins. Co., 102 Iowa 550; Stephenson v. Bankers Life Assn., 108 Iowa 637.

One other question is raised which seems to merit serious consideration.

It is pleaded, and the evidence sustains the allegation, that the plaintiff, Larsen and Son, were a copartnership consisting of James Larsen and Nis Larsen, the latter being the father of the former. The former conducted a small grocery store at Brayton, Iowa, under the general management of the father. The son was also engaged in business in the town of Audubon, Iowa, some eight miles distant from Brayton. In the early part of August, 1929, one F. W. Stager appeared at the place of business of N. Larsen & Son in Brayton and negotiations were entered into for the purchase by Stager of the stock of merchandise of the partnership. This transaction seems to have been on or about the 10th day of that month. After some negotiations, it was agreed that part of the said stock should be sold to Stager for a lump sum of $975.00, and thereupon a bill of sale was executed and acknowledged by Larsen and Stager, and Stager delivered to Larsen five checks, drawn by Stager on an Anita bank, payable to Nis Larsen, in the total sum of the purchase price, $975.00. Stager took possession of the stock and retailed a part thereof that night. The keys of the store were turned over to him and he locked the store when it was closed for the night. The stock was burned about two o'clock the next morning. The question here raised is that Nis Larsen, as one of the members of said partnership, had no right to sell and dispose of the partnership property without the consent of his other partner, James Larsen. James Larsen testified that he knew nothing about the alleged sale by Nis until after the fire. It is claimed, therefore, that there was not a completed sale of the property to Stager; hence the provision of the policy was not violated providing that "if any change * * * takes place in the interest, title, possession or use of the subject of insurance" this policy shall be void.

Assuming that the contention of the appellees herein is correct,—that one partner has no right to sell all of the partnership property without the consent of the other partner,—the record shows undisputedly that the value of various parts of the merchandise which were retained by the seller, equalled, if it did not exceed in value, the amount disposed of. More than this, the checks delivered by Stager for the purchase price

of this property were deposited with the Brayton Savings Bank the next morning. It is to be noticed that while James Larsen stated to his father that he (the father) "had sold the property too cheap", he did not object to the sale to Stager, and did not tender back the amount of the purchase price. He sues in this action as the surviving partner,—his father having previously died,—and as administrator of his father's estate. We are disposed to hold under these circumstances, as a matter of law, that the sale by N. Larsen to the purchaser was a completed sale, and the title to the property passed with the possession thereof which was turned over to the purchaser on the evening of the day prior to the fire. This being true, the Company would not be liable for the loss of the value of the goods sold to Stager, but we do not think it would relieve it from liability for that part of the stock of goods retained by the partnership and covered by this insurance policy. This distinction was not noted by the court in its instructions; hence there was error.

One other question is raised and discussed which demands attention.

█ This policy is written to cover a stock of merchandise consisting chiefly of groceries, provisions, canned goods, coffee, tea, spices, cigars and tobacco, fresh, salted and smoked meats, country produce, bakery goods, confectionery and such other merchandise as is usually kept for sale in grocery stores and meat markets.

There is some evidence tending to show that in this store, aside from the articles enumerated in the policy, there were kept some shoes and produce, and it is insisted that the policy does not cover these latter items.

While the doctrine of *ejusdem generis* applies to fire insurance policies (Emery & Co. v. American Ins. Co., 177 Iowa 4), we do not think it has any application to the question raised here. Evidence was introduced in the case to show that in this vicinity, grocery stores and meat markets carried this disputed line of merchandise, and it is to be further noted that the wording of the policy states that it covers a stock of merchandise consisting *chiefly,* etc.

We are disposed, therefore, to the conclusion that the alleged articles in dispute were covered by this policy.

For the errors heretofore pointed out, the case is—Reversed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.