**CONRAD BROTHERS, Appellee,**

v.

**JOHN DEERE INSURANCE COMPANY, Appellant.**

**No. 00–0694.**

Supreme Court of Iowa.

Dec. 19, 2001.

Gregg Geerdes, Iowa City, for appellant.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellee.

CADY, Justice.

In this appeal, we must decide if the rights of an insured to the replacement costs of damaged property covered under a casualty insurance policy were properly assigned by the insured to a mortgagee, and whether an assignee is required to make the repairs or replace the property

before the insurer is obligated to pay replacement costs. The district court and court of appeals found the assignment was valid and that the intent to rebuild by the assignee triggered the insurer's obligation to pay. We agree that the assignment was valid and conclude the assignee was relieved of the condition precedent to repair or replace the property based upon a repudiation of the insurance contract by the insurer. We affirm the decision of the court of appeals and the judgment of the district court.

## I. Background Facts and Proceedings.

R.L. Schott Implements, Inc. (Schott) operated a John Deere implement dealership in Sigourney, Iowa. The dealership was operated on land owned by Schott. There were two buildings on the premises—a storage and maintenance building, and an office building which housed the retail portion of the business.

On August 26, 1997, Schott executed a mortgage on the property to Conrad Brothers Partnership (Conrad Bros.) to secure a $300,000 promissory note. Pursuant to the mortgage, Schott was required to maintain insurance which provided replacement cost coverage on the buildings to protect against windstorm loss and other commercially reasonable hazards.

The mortgage agreement additionally delineated the parties' rights in the event of a default on the note by Schott. Upon default, Conrad Bros. was permitted to immediately record a deed in lieu of foreclosure. The deed constituted complete satisfaction of Schott's obligations under the mortgage. Furthermore, the mortgage provided that the deed would result in the assignment of Schott's rights to any insurance proceeds.

Schott obtained a casualty insurance policy from John Deere Insurance Company (John Deere) in March 1998. The policy insured the two buildings against windstorm loss. It permitted the insured to make a claim for the actual cash value of the property, as well as an additional claim for the replacement costs. However, the policy posed several conditions on a claim for replacement costs. First, the insured was required to replace or repair the damaged property within a reasonable time after the loss or damage. If the insured rebuilt on a different premises, it was entitled to no more than the cost to replace the building on the same premises using similar material as the original building. In addition, the insured was required to notify the insurer within 180 days of loss of the insured's intent to seek replacement costs.

John Deere included a standard loss payable provision in the insurance policy. It provided for the payment of damages to a mortgagee named in the policy. Conrad Bros. was not named as a loss payee or a mortgage holder. Moreover, the policy prohibited the assignment of rights and duties under the policy without John Deere's written consent. Schott did not request John Deere's approval of the assignment clause contained in its mortgage agreement with Conrad Bros. Prior to the incidents giving rise to this action, John Deere was unaware of Conrad Bros.'s interest in the insured property.

After losing its dealership license in May 1998, Schott terminated its business operations. On June 29, 1998, a windstorm extensively damaged the office building and completely destroyed the storage and maintenance building. Schott promptly filed a proof of loss with John Deere. Conrad Bros. then informed John Deere of its mortgage interest. Not long after the windstorm loss, Schott defaulted on the

mortgage. Conrad Bros. elected to file the deed in lieu of foreclosure on July 14, 1998.

The full cost to replace the buildings totaled $120,075. The actual cash value of the loss equaled $60,037.50. John Deere issued a joint check to Schott and Conrad Bros. for the actual cash value, minus the deductible. Schott subsequently endorsed the check to Conrad Bros.

Conrad Bros. then made a claim for the replacement costs from John Deere. John Deere informed Conrad Bros. it was not covered by the policy because it was not listed as a mortgage holder. Thus, it informed Conrad Bros. that any claim under Schott's insurance policy would be denied.

Conrad Bros. filed a petition at law requesting replacement cost damages of $60,037.50, plus interest. John Deere responded by claiming Conrad Bros. extinguished its insurable interest when it filed the deed in complete satisfaction of the mortgage, and further contested the validity of the assignment. Alternatively, John Deere pled the affirmative defense of lack of compliance with the condition precedent requiring actual replacement before an insured is entitled to replacement costs.

Conrad Bros. moved for summary judgment. It claimed it held a valid assignment and John Deere's refusal to acknowledge any responsibility for coverage excused the performance of any condition precedent under the insurance agreement to rebuild. It further claimed it was ready and able to rebuild but wanted assurance from John Deere that it would pay the replacement costs before rebuilding.

The district court granted summary judgment for Conrad Bros. It found the assignment was valid and Conrad Bros. was entitled to receive the replacement costs under the policy without first repair-ing or replacing the buildings. The court found it would be unreasonable to require Conrad Bros. to comply with the condition when John Deere was disputing the coverage.

The court later held a trial to determine whether Conrad Bros. was entitled to a damage award. Following the evidence, the district court found Conrad Bros. had complied with the provision requiring notice of intent to seek replacement costs within 180 days of the loss and it was reasonable for it not to perform the condition requiring the repairs to be made because John Deere had denied any coverage. The district court entered judgment for Conrad Bros. in the amount of $60,037.50.

John Deere appealed. We transferred the case to the court of appeals. It affirmed the district court's conclusions regarding the validity of the assignment and Conrad Bros.'s right to replacement cost coverage. It determined Conrad Bros. complied with the policy provision requiring actual replacement before the insured is entitled to replacement costs under the circumstances based on its intent to replace the property.

John Deere petitioned for further review. It claims the deed in lieu of foreclosure filed by Conrad Bros. extinguished the debt and eliminated any insurable interest. Alternatively, John Deere claims that its denial of coverage did not excuse the condition precedent requiring the buildings to be rebuilt before it was obligated to pay replacement costs.

## II. Standard of Review.

 Initially, we must determine our standard of review. John Deere contends our review is limited to the summary judgment ruling. Conversely, Conrad Bros. counters we must also review the post-trial ruling, as the district court's conclusions

further supported the summary judgment decision. In either case, our standard of review is the same. We review for errors at law. *See Pierce v. Farm Bureau Mut. Ins. Co.,* 548 N.W.2d 551, 553 (Iowa 1996). Instead, the question presented goes to the scope of our review. This case proceeded to final judgment and the issues presented at the summary judgment hearing were revisited at trial. Accordingly, we review the entire record and are bound by the findings of the district court if supported by substantial evidence. *Id.*

### III. Insurable Interest.

■ It is a well-established rule of insurance law that a person must possess an insurable interest in the insured property in order to recover under a policy of insurance. *See* 44 C.J.S. *Insurance* § 219, at 419 (1993). John Deere advances two reasons in support of its argument that Conrad Bros. had no insurable interest in the two damaged buildings insured by Schott. First, John Deere contends the purported assignment was invalid because the insurance policy expressly prohibited assignments and, alternatively, because the assignment was executed before the loss had been incurred. Second, John Deere claims the filing of the deed extinguished Conrad Bros.'s equitable lien on the insurance proceeds because the deed was accepted as full satisfaction for Schott's debt.

### A. Assignment.

At common law, an insured was prohibited from assigning its insurance policy and underlying rights. 43 Am.Jur.2d *Insurance* § 789, at 851 (1982). However, the law now generally favors the assignability of choses in action, and courts have permitted the assignment of insurance policies under statutes providing for the assignment of contracts in exchange for a money payment. *Id.* Iowa Code section 539.1 is such a statute. *See* Iowa Code § 539.1 (1997) (assignment of nonnegotiable instruments).

■ Notwithstanding, insurers may impose conditions in the terms of the policy on an insured's ability to assign its rights under the insurance policy. 43 Am. Jur.2d *Insurance* § 790, at 852. One common condition imposed on insureds is the requirement to obtain the insurers' consent before granting an assignment. *Id.* § 810, at 865. Generally, insurance policies, particularly those regarded as personal contracts, such as fire insurance and liability policies, are not assignable prior to loss without the insurer's consent. *Id.* § 789, at 852; *see Antal's Restaurant, Inc. v. Lumbermen's Mut. Cas. Co.,* 680 A.2d 1386, 1388 (D.C.1996). In fact, we have previously invalidated the assignment of an insurance policy and its underlying claims prior to the occurrence of the condition triggering liability under the policy. *See Neiman v. Hawkeye Sec. Fire Ins. Co.,* 205 Iowa 119, 125, 217 N.W. 258, 261 (1927); *Davis v. Bremer County Farmers' Mut. Fire Ins. Ass'n,* 154 Iowa 326, 329, 134 N.W. 860, 862 (1912); *see also Welch v. Taylor,* 218 Iowa 209, 212, 254 N.W. 299, 301 (1934) (may assign interest to any claim under the insurance policy after the loss occurs).

■ The casualty insurance policy issued to Schott in this case contained what is considered to be standard policy language prohibiting an insured from assigning its interests without the insurance company's consent.[1] The anti-assignment

---

1. The anti-assignment clause specifically provided:

Your rights and duties under this policy may not be transferred without our written

provision did not specify whether it applied to assignments executed before or after the loss. However, general stipulations prohibiting assignments absent an insurer's consent have been held to apply only to pre-loss assignments. 43 Am.Jur.2d *Insurance* § 792, at 854. The great weight of authority supports the rule that an anti-assignment clause does not apply to the assignment of claims arising after the loss. *See Straz v. Kansas Bankers Sur. Co.,* 986 F.Supp. 563, 569 (E.D.Wis.1997); *Viola v. Fireman's Fund Ins. Co.,* 965 F.Supp. 654, 658 (E.D.Pa.1997); *Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F.Supp. 417, 422–23 (W.D.Mich.1993); *McLaren v. Imperial Cas. & Indem. Co.,* 767 F.Supp. 1364, 1377 (N.D.Tex.1991); *United States v. Lititz Mut. Ins. Co.,* 694 F.Supp. 159, 162 (M.D.N.C.1988); *Int'l Rediscount Corp. v. Hartford Accident & Indem. Co.,* 425 F.Supp. 669, 673 (D.C.Del. 1977); *Southwestern Bell Tel. Co. v. Ocean Accident & Guarantee Corp.,* 22 F.Supp. 686, 687 (D.C.Mo.1938); *St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.,* 25 Ariz.App. 309, 543 P.2d 147, 149 (1975); *Antal's Restaurant, Inc.,* 680 A.2d at 1388; *Lexington Ins. Co. v. Simkins Indus., Inc.,* 704 So.2d 1384, 1386 n. 3 (Fla.1998); *Gisela Invs., N.V. v. Liberty Mut. Ins. Co.,* 452 So.2d 1056, 1057 (Fla.Dist.Ct.App.1984); *A.J. Maggio Co. v. Willis,* 316 Ill.App.3d 1043, 250 Ill.Dec. 376, 738 N.E.2d 592, 597 (2000); *Goldstein v. Scott,* 108 Ill.App.3d 867, 64 Ill.Dec. 374, 439 N.E.2d 1039, 1043 (1982); *Elat, Inc. v. Aetna Cas. & Sur. Co.,* 280 N.J.Super. 62, 654 A.2d 503, 505 (1995); *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.,* 124 Wash.2d 789, 881 P.2d 1020, 1027 (1994); *Smith v. Buege,* 182 W.Va. 204, 387 S.E.2d 109, 116 (1989); *see also* 43 Am. Jur.2d *Insurance* § 810, at 866 ("in the absence of an express provision to the

contrary, provisions relating to the consent of an insurer to an assignment do not relate to assignments after loss"). Moreover, even if the provision had specifically prohibited post-loss assignments, it would most likely be in contravention of public policy and the general purpose of indemnity contracts. *See Straz,* 986 F.Supp. at 569; *Southwestern Bell Tel. Co.,* 22 F.Supp. at 687; 43 Am.Jur.2d *Insurance* § 792, at 854.

The policy underlying these well-settled rules explains the rationale for distinguishing between assignments before and after loss. The primary reason for the prohibition of assignments prior to loss absent an insurer's consent is to protect the insurer against increased risks of loss resulting from an assignment of coverage to a new insured. *See Viola,* 965 F.Supp. at 659; *St. Paul Fire & Marine Ins. Co.,* 543 P.2d at 149; *Pub. Util. Dist. No. 1,* 881 P.2d at 1027. The assignee may present a greater risk of loss to the insurer than the original insured. However, the need to protect the insurer no longer exists after the insured sustains the loss because the liability of the insurer is essentially fixed. *See Viola,* 965 F.Supp. at 659; *Buege,* 387 S.E.2d at 116. This is particularly true in the case of windstorm damage, where the personal character of the insured can no longer affect the insurer's liability. *See Southwestern Bell Tel. Co.,* 22 F.Supp. at 687–88; *Antal's Restaurant, Inc.,* 680 A.2d at 1388; *Davis,* 154 Iowa at 329–30, 134 N.W. at 863. Furthermore, once the loss has triggered the liability provisions of the insurance policy, an assignment is no longer regarded as a transfer of the actual policy. *See Kintzel v. Wheatland Mut. Ins. Ass'n,* 203 N.W.2d 799, 804–05 (Iowa 1973);

consent except in the case of death of an individual named insured.
. . . .

All other terms and provisions of the policy remain unchanged.

*Buege*, 387 S.E.2d at 116. Instead, it is a transfer of a chose in action under the policy. *See St. Paul Fire & Marine Ins. Co.*, 543 P.2d at 149; *Kintzel*, 203 N.W.2d at 805. At this point, the insurer-insured relationship is more analogous to that of a debtor and creditor, with the policy serving as evidence of the amount of debt owed. *Antal's Restaurant, Inc.*, 680 A.2d at 1389; *Elat, Inc.*, 654 A.2d at 505; *see Straz*, 986 F.Supp. at 569. Moreover, if we permitted an insurer to avoid its contractual obligations by prohibiting all post-loss assignments, we could be granting the insurer a windfall. *See Int'l Rediscount Corp.*, 425 F.Supp. at 673; *St. Paul Fire & Marine Ins. Co.*, 543 P.2d at 149–50; *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 857 P.2d 540, 541 (Colo.Ct.App.1993); *Elat, Inc.*, 654 A.2d at 506.

We must next consider whether the assignment in this case occurred before or after the windstorm damaged Schott's buildings. John Deere claims this was a prohibited pre-loss assignment because the assignment was effective upon the execution of the mortgage agreement. To the contrary, the mortgage agreement provided for assignment of the insurance policy rights upon the filing of the deed in lieu of foreclosure. Although the assignment clause in the mortgage existed before the loss, it was merely an agreement to assign and did not become an actual assignment until the filing of the deed. *See Buege*, 387 S.E.2d at 117. The deed was not filed until after the windstorm damage. Consequently, the assignment did not take effect until after the loss. Thus, Schott validly assigned Conrad Bros. its right to seek replacement cost proceeds from John Deere for the damage to the two buildings.

As assignee, Conrad Bros. stepped into Schott's shoes. *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000);

43 Am.Jur.2d *Insurance* § 791, at 854. The assignment vested in Conrad Bros. all of Schott's rights to insurance proceeds. *Krohn v. Gardner*, 248 Neb. 210, 533 N.W.2d 95, 98 (1995). At the same time, it made Conrad Bros. responsible for proving compliance with the policy terms. *Kelly*, 620 N.W.2d at 641. Additionally, it limited any recovery by Conrad Bros. to no more than what Schott could have recovered under the policy. 6 Am.Jur.2d *Assignments* § 144, at 239 (1999). Furthermore, Conrad Bros.'s right to recovery is subject to any defense John Deere can assert against Schott. *Kelly*, 620 N.W.2d at 641; 43 Am.Jur.2d *Insurance* § 791, at 854. Thus, Conrad Bros. must prove it has satisfied all of the condition precedents, or demonstrate a viable legal excuse for any failure to comply. *Kelly*, 620 N.W.2d at 641.

## B. Filing of Deed in Lieu of Foreclosure.

In addition to obtaining an insurable interest by assignment, Conrad Bros. had an insurable interest in the buildings to the extent secured by the mortgage. 44 C.J.S. *Insurance* § 228(b), at 430. Even though Schott failed to name Conrad Bros. as a loss payee or mortgage holder, the mortgage covenant requiring Schott to maintain insurance gave Conrad Bros. an interest in the insurance policy. 5A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 3381, at 243 (rev. ed.1970) [hereinafter Appleman]; *see Winneshiek Mut. Ins. Ass'n v. Roach*, 257 Iowa 354, 362, 132 N.W.2d 436, 441 (1965) (mortgagee has no interest in mortgagor's insurance policy unless provided for in mortgage agreement); *Johnson v. N. Minn. Land & Investment Co.*, 168 Iowa 340, 344, 150 N.W. 596, 598 (1915) (same). Moreover, an insurance policy should be treated as if it named the mort-

gage holder when a mortgagor fails to uphold its promise to do so. *See* 5A Appleman § 3381, at 245 n. 23. Accordingly, we have consistently held a mortgagee has an equitable lien on the proceeds of an insurance policy procured by the mortgagor for the mortgagee's benefit despite the failure to expressly include the mortgagee in the insurance policy. *Kintzel,* 203 N.W.2d at 804; *Winneshiek,* 257 Iowa at 363, 132 N.W.2d at 441; *Johnson,* 168 Iowa at 344, 150 N.W. at 598; *Mahoney v. State Ins. Co.,* 133 Iowa 570, 580, 110 N.W. 1041, 1044 (1907).

A mortgagee's interest in an insurance policy obtained on its behalf continues until the mortgagee extinguishes the mortgage debt. 44 C.J.S. *Insurance* § 228(b), at 431. John Deere contends Conrad Bros.'s interest in insurance proceeds extinguished when it filed the deed in lieu of foreclosure in complete satisfaction of the mortgage and its underlying obligations. John Deere correctly notes that the filing of the deed released Schott from further liability. *Lititz Mut. Ins. Co.,* 694 F.Supp. at 162. However, it did not release John Deere from liability. *Id.* On the contrary, the mortgage agreement specifically provided that Conrad Bros. would receive the title to the buildings and the right to insurance proceeds in satisfaction of the mortgage debt. *See id.; Bartlett v. Iowa State Ins. Co.,* 77 Iowa 86, 87–88, 41 N.W. 579, 579 (1889). As assignee of Schott's unpaid insurance claim, Conrad Bros. possessed an absolute right to receive insurance proceeds up to the amount necessary to satisfy the outstanding debt. *Lititz Mut. Ins. Co.,* 694 F.Supp. at 162.

Any claim that Conrad Bros. will be unjustly enriched by this holding is unfounded. In fact, John Deere would be the unjustly enriched party if we ruled otherwise, as it would successfully avoid paying proceeds altogether. *Id.* This is not a case where the mortgagor has obtained a judgment for the full amount secured by the mortgage. *See Farmers & Merchants Sav. Bank v. Farm Bureau Mut. Ins. Co.,* 405 N.W.2d 834, 837 (Iowa 1987); *Border State Bank v. Farmers Home Group,* 620 N.W.2d 721, 724–25 (Minn.Ct.App.2000); *see also Union Cent. Life Ins. Co. v. Bracewell,* 209 Iowa 802, 807, 229 N.W. 185, 187 (1930); *Tott v. Johnson,* 51 Iowa 192, 196, 1 N.W. 498, 500 (1879). Likewise, this is not a case where the mortgagee had the opportunity to outbid and cut off lower bidders at a foreclosure sale. *See Farmers & Merchants Sav. Bank,* 405 N.W.2d at 837. On the contrary, Conrad Bros. has yet to obtain what it bargained for in the mortgage agreement. *See Union Cent. Life Ins. Co.,* 209 Iowa at 809, 229 N.W. at 188; *Bartlett,* 77 Iowa at 87–88, 41 N.W. at 579–80. The right to Schott's insurance loss claims was a part of the consideration in the execution of the mortgage. *See Union Cent. Life Ins. Co.,* 209 Iowa at 809, 229 N.W. at 188 (discussing facts in *Bartlett* ).

## IV. Replacement Cost Coverage.

Under the applicable provisions of the insurance policy, Schott was required to replace the damaged buildings in order to qualify for replacement cost coverage. The parties agree that this provision operates as a condition precedent to recovery of replacement costs. *See Kolls v. Aetna Cas. & Sur. Co.,* 503 F.2d 569, 571 (8th Cir.1974); *Snellen v. State Farm Fire & Cas. Co.,* 675 F.Supp. 1064, 1067 (W.D.Ky. 1987); *Pierce,* 548 N.W.2d at 554; *Bosch v. Garcia,* 286 N.W.2d 26, 28 (Iowa 1979); *Higgins v. Ins. Co. of N. Am.,* 256 Or. 151, 469 P.2d 766, 772 (1970); *Hess v. N. Pac. Ins. Co.,* 122 Wash.2d 180, 859 P.2d 586, 589–90 (1993); *see generally* Randy R. Koenders, Annotation, *Construction and Effect of Property Insurance Provision*

*Permitting Recovery of Replacement Cost of Property*, 1 A.L.R.5th 817, 848–52 (1992) [hereinafter Koenders]. The reason insurers place this provision in insurance policies is to prevent an insured from making a profit from a loss. *See Pierce*, 548 N.W.2d at 554; *see also* Johnny Parker, *Replacement Cost Coverage: A Legal Primer*, 34 Wake Forest L.Rev. 295, 298–99 (1999) [hereinafter Parker]; Koenders, 1 A.L.R.5th at 829. When a policy distinguishes between coverage for actual loss, which considers depreciation as a component to value, and the cost of rebuilding, which does not consider depreciation, an insured can profit by receiving replacement costs which are not then used to replace property which depreciated in value prior to the loss. However, Conrad Bros. contends John Deere's conduct in denying responsibility for coverage to Conrad Bros. excused its failure to comply with the condition precedent.

It is widely recognized that "a party may not rely on a condition precedent when by its own conduct it has made compliance with that condition impossible." *State Farm Fire & Cas. Ins. Co. v. Miceli*, 164 Ill.App.3d 874, 115 Ill.Dec. 832, 518 N.E.2d 357, 362 (1987). This rule has been frequently applied to insurance contracts. *Id.* In fact, several courts have excused performance by the insured when the insurer's conduct actually prevented the insured from rebuilding the damaged property. *See, e.g., Maine Mut. Fire Ins. Co. v. Watson*, 532 A.2d 686, 689 (Me. 1987); *Bailey v. Farmers Union Co-op. Ins. Co.*, 1 Neb.App. 408, 498 N.W.2d 591, 598–99 (1992); *see* Parker, 34 Wake Forest L.Rev. at 314, 323. Courts often hinge their findings of excuse on the insurer's bad faith or deceitful conduct towards the insured during the claims process. *Dickler v. CIGNA Prop. & Cas. Co.*, 957 F.2d 1088, 1096 (3d Cir.1992) (insurer prevented insured from learning of its right to replacement costs); *Maine Mut. Fire Ins. Co.*, 532 A.2d at 689 (blatant misrepresentation of critical policy language by insurance adjuster); Parker, 34 Wake Forest L.Rev. at 323; *see O–So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 503 (6th Cir.1992) (condition precedent of actual replacement excused only if nonperformance due to insurer's bad faith actions). Yet, in finding an excuse, courts have universally based their determination on the theory of impossibility or frustration of performance. *Ward v. Merrimack Mut. Fire Ins. Co.*, 332 N.J.Super. 515, 753 A.2d 1214, 1218 (2000) (even if the insured asserts or the court mentions estoppel, the courts generally resolve the issue on the impossibility theory); *see* Parker, 34 Wake Forest L.Rev. at 321–25; Koenders, 1 A.L.R.5th at 855–59.

The district court and the court of appeals relied upon this approach to excuse the performance of the condition to rebuild the property under the insurance agreement. *See Mel Frank Tool & Supply, Inc. v. Di–Chem Co.*, 580 N.W.2d 802, 806 (Iowa 1998); *Nova Springs Co-op. Co. v. Brandau*, 247 N.W.2d 744, 747 (Iowa 1976). However, when nonperformance is only temporary, the duty to perform is merely suspended during the period the performance is not possible. *Nova Springs Co-op. Co.*, 247 N.W.2d at 747. Thus, while a coverage dispute may excuse performance by the insured of certain conditions that could no longer be performed even after the coverage dispute is resolved, it would not be necessary to excuse the performance of a condition precedent that would still be capable of performance following the resolution of the coverage question, at least in the absence of bad faith by the insurer. *See Tamco Corp. v. Fed. Ins. Co.*, 216 F.Supp. 767, 775 (D.C.Ill.1963).

In this case, Conrad Bros. would be capable of performing the condition once coverage was determined. Nevertheless, the district court and court of appeals excused performance of the condition to rebuild based upon a finding that it would be a useless and unreasonable act without assurance of coverage. While this reasoning is sound, another doctrine exists that properly considers this rationale, and enables Conrad Bros. to obtain a judgment for the replacement costs without first replacing the buildings.

 Where one party to a contract repudiates the contract before the time for performance has arrived, the other party is relieved from its performance. *See* Restatement (Second) of Contracts § 253(2) (1981); 13 Richard A. Lord, *Williston on Contracts* § 39:37, at 663 (4th ed.2000) [hereinafter *Williston* ]. Additionally, once a party repudiates a contractual duty before performance is due, the other party may enforce the obligation by filing a claim for damages without fulfilling any conditions precedent. Restatement (Second) of Contracts § 253 cmt. b; 13 *Williston* § 39:37, at 666, 668. A repudiation of a contract is accorded the same effect as a breach by nonperformance. Restatement (Second) of Contracts § 255 cmt. a. The rationale for the repudiation doctrine is explained as follows:

> The rationale behind the rule that a repudiation of a contract by one party will excuse the other party from the duty to perform contractual obligations and conditions, is the prevention of economic waste, in the sense that, following a clear repudiation, the other party should not be required to perform the formal, economically wasteful, and useless act of further performing. "It would seem to be reasonable and just, upon the repudiation of the contract by one party, that the other be held justi-

fied in ceasing performance, stopping expenditure, and thus curtailing the damages which the other party would be ultimately liable to pay." To further comply with the contract requirements where the other party has repudiated the contract would be a useless act, and the law does not require the doing of a useless act.

13 *Williston* § 39:37, at 666–67 (footnotes omitted); *see* Restatement (Second) of Contracts § 255 cmt. a ("No one should be required to do a useless act . . . .").

 Normally, "repudiation consists of a statement that the repudiating party cannot or will not perform." II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.21, at 535 (2d ed.1998) [hereinafter *Farnsworth* ]. "The statement must be sufficiently positive to be reasonably understood . . . that the breach will actually occur." *Id.; see Lane v. Crescent Beach Lodge & Resort, Inc.,* 199 N.W.2d 78, 82 (Iowa 1972) ("[a]nticipatory breach requires a definite and unequivocal repudiation"); *Waterman v. Bryson,* 178 Iowa 35, 40, 158 N.W. 466, 467 (1916) ("positive notice of an intended breach"). Thus, we must consider whether there was substantial evidence of repudiation.

 It can be particularly difficult to determine if a statement amounts to a repudiation when it results from an honest but mistaken misunderstanding of the rights of the parties under the contract. II *Farnsworth* § 8.21, at 536–37. Generally, a good faith dispute by a party will not prevent a statement from becoming a repudiation. *Id.* at 537. Thus, a party typically "acts at its peril if that party, insisting on what it mistakenly believes to be its rights, refuses to perform its duty." *Id.* However, when two parties differ as to the interpretation of a contract, the mere demand by one party that the contract be performed according to its interpretation does not in and of itself constitute repudia-

tion. 4 Arthur Linton Corbin, *Corbin on Contracts* § 973, at 911 (1951). Instead, a demand must be accompanied by a clear expression of intent not to perform under any other interpretation. *See id.; P & L Contractors, Inc. v. Am. Norit Co.*, 5 F.3d 133, 139 (5th Cir.1993). Thus, a demand for performance on terms that go beyond the contract does not constitute repudiation, unless coupled with an intent not to perform if those terms are not accepted. II *Farnsworth* § 8.21, at 537–38.

In this case, John Deere denied any coverage on the claim by Conrad Bros. This denial of coverage, even though based upon a mistaken interpretation, was a clear intent not to perform. Thus, John Deere repudiated the contract. This conclusion is consistent with the general view that an insured is excused under the doctrine of repudiation from compliance with preliminary conditions of an insurance policy when "an insurance company indicates that it will not pay an insurance loss in any event." 13 *Williston* § 39:39, at 678; *see Larsen & Son v. Retail Merchants Mut. Ins. Co.*, 212 Iowa 943, 946, 237 N.W. 468, 470 (1931) (insurance company waives proof of loss when it denies liability despite knowledge of property destruction from fire).

The result in this case may seem somewhat harsh considering there was no evidence that John Deere denied coverage in bad faith. However, there are three factors which mitigate any harshness of the result. First, insurers may resolve coverage disputes without repudiating the insurance contract by utilizing such procedural devices as declaratory judgments. *See* Restatement (Second) of Contracts § 250 cmt. d. Second, even though an insurer denies coverage in good faith, the result to the insured, or an assignee of the insured's claim, is the same. The insured or assignee will not obtain coverage by performing the condition precedent.

Third, the insured is unable to use the insurer's repudiation as a windfall, because the insured must prove the repudiation materially contributed to its nonperformance. *See* Restatement (Second) of Contracts § 255.

Under the applicable governing principles, Conrad Bros. was entitled to rely on John Deere's statements that it would not pay a replacement cost loss to an assignee. As a result, we conclude John Deere repudiated its obligation under the contract. The only remaining issue to determine is whether that repudiation also contributed materially to the occurrence of Conrad Bros.'s failure to repair or that such failure to repair would have occurred in any event. *See id.* & cmt. a. The district court made the following finding of fact on this point:

> Conrad showed through the testimony of Gail Conrad and John Conrad and through its exhibits, including Plaintiff's Exhibit 3, that it had incurred or was ready, willing, and able to incur amounts in excess of $60,037.50 by way of acquisition of a replacement building to the building destroyed on the R.L. Schott premises on June 28, 1998.

There is substantial evidence from which the court could have concluded Conrad Bros. would have repaired but for John Deere's repudiation. Consequently, that condition is excused, and Conrad Bros. is entitled to damages based on the full replacement costs. We affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except STREIT, J., who takes no part.