# IN THE COURT OF APPEALS OF IOWA

No. 22-1158
Filed July 13, 2023

**MIDWEST SOYA INTERNATIONAL, INC.,**
    Plaintiff-Appellant,

**vs.**

**JEFFREY ALAN LEERAR,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

Midwest Soya International, Inc. appeals from the district court's ruling dismissing its breach-of-contract claim against Jeffrey Leerar. **AFFIRMED.**

James P. McGuire of McGuire Law, P.L.C., Mason City, for appellant.

Sean Moore of Brown, Winick, Graves, Gross, and Baskerville, P.L.C., Des Moines, for appellee.

Heard by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

When customary practice and the parties' intent is for delivery no later than end of year, but the buyer refuses to take delivery until January, has the buyer repudiated the contract? We answer yes, under the particular facts and circumstances of this case involving the sale of non-GMO soybeans. We affirm the district court's dismissal of this breach-of-contract suit, though we part ways with much of the district court's reasoning.

### I.     Background Facts and Proceedings

In February 2019, Jeffery Leerar entered into a written agreement with Midwest Soya International, Inc. (MSI) to sell non-GMO soybeans harvested from 311 acres of Leerar's farmland during the 2019 crop year. Under the agreement, Leerar was responsible for the costs of production and for storing the beans until MSI called for delivery.

The agreement was vague on pricing. In the end, Leerar priced the beans on September 3, 2020. The September pricing date was a few days beyond the date specified in the agreement, but the parties approved this extension.

The agreement also did not specify when delivery would occur. Leerar testified that, in his experience selling beans, "you usually get them picked up within a month [of pricing], or you usually deliver them fairly quickly." Leerar explained that he believed a reasonable timeframe for delivery under this agreement was "a month" and no later than December 2020 when he priced the beans in September. MSI's representative testified that, for bean contracts, "usually if they're priced, we'll get to them within the next 30 days." MSI's representative also testified that it would "not usually" be reasonable to delay

delivery of 2019 crops to December 2020 and that "it's never happened before." This was consistent with Leerar's testimony he stored these beans "longer than [he had] ever held grain in [his] entire career." MSI's representative also testified that he believed both MSI and Leerar expected delivery to take place "by October, November of 2020."

By late December 2020, Leerar had requested MSI take delivery of the beans at least four times after he priced them in September. Each time, MSI reported it could not get the beans then (purportedly because of pandemic-related delays) but hoped to pick them up in the future. After a snowstorm around Christmas Eve, Leerar walked the bins, saw snow inside, and thought the beans were starting go bad because of the smell. Leerar was concerned about deterioration due to moisture, as MSI was permitted to discount the sale price based on quality. Eventually, MSI indicated it wanted to take delivery of the beans in January 2021, but Leerar sold the beans to another buyer on or about December 30, 2020.

MSI demanded compensation from Leerar for not delivering the beans, as MSI had re-sold them to another company in anticipation of foreign export. When Leerar declined, MSI filed suit for breach of contract and sought damages. Leerar answered, denying the existence of an enforceable contract, contesting damages, and raising six affirmative defenses. After a contested trial, the district court ruled for Leerar, finding no enforceable contract and, even if there were an enforceable contract, all six affirmative defenses were proven. MSI appeals.

## II.     Standard of Review

We review a breach-of-contract action for correction of errors at law. *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 465 (Iowa 2010).  We are bound by findings of fact if supported by substantial evidence.  *Id.*  We are not bound by any conclusions of law or the application of legal principles to the facts. *Id.*

## III.     Discussion

Although we affirm the district court's judgment, we analyze the issues a bit differently.  We conclude there was a valid contract, but MSI's breach of the implied delivery term repudiated the agreement and relieved Leerar of any obligation to deliver the beans.

### A.  Was there a contract?

As a general proposition, binding contracts require offer, acceptance, and consideration.  *See Margeson v. Artis*, 776 N.W.2d 652, 655 (Iowa 2009).  We have little trouble concluding these elements are facially met: MSI offered to buy the beans under the terms set forth in the agreement, Leerar accepted, and the offered consideration was payment upon delivery.  The tougher question, which ensnared the district court, is whether the vague or ill-defined pricing and delivery terms invalidate an otherwise satisfactory agreement.

"[C]ontract terms must be sufficiently definite for the court to determine the duty of each party and the conditions of performance." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).  For example, if there is a misunderstanding as "to the object of the agreement so that 'one party [understands] [it] is buying one thing and the other party thinks [it] is selling another

thing, no meeting of the minds occurs, and no contract is formed.'"  *Schaer v. Webster Cnty.*, 644 N.W.2d 327, 338 (Iowa 2002) (alterations in original) (quoting *Hill-Schafer P'Ship v. Chilson Fam. Tr.*, 799 P.2d 810, 814 (Ariz. 1990)).

First, as to the pricing term, we accept the MSI representative's testimony that farmers customarily price the crops under this and similar agreements.  We also accept the apparently undisputed extension of time to September 3, 2020, which renders the pricing term as executed by Leerar valid.  *See Passehl Est. v. Passehl*, 712 N.W.2d 408, 417 (Iowa 2006) (holding that a written contract may be modified by a subsequent oral contract).  The pricing term was sufficiently definite, and we disavow the district court's conclusion otherwise.

Second, as to the undefined delivery date, our case law authorizes us to look to extrinsic evidence or evidence of custom and practice.  *See Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999) ("If the contract is ambiguous and uncertain, extrinsic evidence can be considered to help determine the intent."); *C-Thru Container Corp. v. Midland Mfg. Co.*, 533 N.W.2d 542, 545 (Iowa 1995) ("[E]ven a completely integrated contract may be supplemented by practices in the industry that do not contradict express terms of the contract.").  The district court found that both parties expected delivery "prior to [Leerar's] 2020 bean harvest and by the very latest December 31, 2020."  This finding tracks the subjective-expectations testimony of Leerar and the MSI representative that we summarized above.  The district court also found, "This is a customary and common sense expectation even when not part of a written agreement."  Giving appropriate deference to the district court's findings of fact, we hold this term sufficiently

definite to support a binding contract. We disavow the district court's conclusion that the delivery term invalidated the agreement.

We note last on this point that, if we did not accept the parties' subjective-expectations evidence or otherwise fill in the delivery-term gap using custom- or practice-evidence, we would likely be required to invalidate the agreement or find it was not enforceable (as unconscionable or otherwise). MSI's position at trial that it could "wait as long as [it] want[s] to take [the beans]" is untenable. We are particularly troubled by the MSI representative's testimony that "there's no deadline" for delivery and he "probably could have" waited as late as the date of trial, in April 2022, to take delivery of Leerar's beans. A contract that obligates one party to bear costs indefinitely, with no guarantee of payment by another, is unenforceable either for failure of consideration or unconscionability. *See In re Marriage of Shanks*, 758 N.W.2d 506, 515 (Iowa 2008) (on unconscionability); *Kristerin Dev. Co. v. Granson Inv.*, 394 N.W.2d 325, 331 (Iowa 1986) (on failure of consideration). In any event, we share the district court's implied finding that the MSI representative's claim that he could wait an indefinite number of years to take delivery of the beans was not reasonable or credible.

Contrary to the district court, we find the agreement, as orally extended and supplemented by extrinsic evidence, was an enforceable contract.

**B. Was there a breach of contract?**

To prevail on a breach of contract claim, MSI was required to prove:

  (1) the existence of a contract,
  (2) the terms and conditions of the contract,
  (3) that [plaintiff] has performed all the terms and conditions
       required under the contract,

> > (4) the defendant's breach of the contract in some particular way, and
> >
> > (5) that plaintiff has suffered damages as a result of defendant's breach.

*Royal Indem.*, 786 N.W.2d at 846. We focus on the third element, whether MSI performed all of its obligations under the contract.

As we have established, the delivery term is only valid if we read in that the parties expected and custom demanded MSI take delivery no later than December 31, 2020. It is undisputed that MSI did not take delivery and, in fact, communicated to Leerar that it was unable to take delivery of the beans until January 2021. This effectively repudiated the agreement, as it was a statement that MSI could not or would not perform in compliance with the implied delivery term. *See generally Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 241–42 (Iowa 2001) (on repudiation). MSI failed to live up to its obligations under the implied delivery term of the agreement, excusing any alleged breach by Leerar. *See id.* at 241 ("A repudiation of a contract is accorded the same effect as a breach by nonperformance.").

Because we resolve this case by finding an element of MSI's claim was not proven, we need not address the affirmative defenses pled by Leerar and found by the district court.

### IV. Disposition

We affirm the judgment of the district court in favor of Leerar but disavow portions of the lower court's contract analysis as set forth in this opinion. We decline to address the affirmative defenses.

**AFFIRMED.**