*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DARRELL ALLEN HOOKER,

       Defendant-Appellant.

UNPUBLISHED
July 9, 2019

No. 340271
Antrim Circuit Court
LC No. 17-004849-FC

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (victim under 13).[1] Defendant was sentenced to serve concurrent prison terms of 25 to 40 years for the CSC-I conviction and 10 to 15 years for the CSC-II conviction. Defendant appeals by right, and we affirm.

Defendant was convicted of engaging in sexual acts with his daughter, the complainant, who was 11 years old at the time of the events. The acts occurred in her bedroom during the winter of 2016. The complainant later reported the incidents to an adult friend, Katie Menestrina, who in turn informed the principal at the complainant's school and the police. The complainant then disclosed the information to authorities during an interview.

On appeal, defendant argues that his trial counsel provided ineffective assistance by failing to produce an expert witness to attack the forensic interview that was conducted by the police and child protective services (CPS), by failing to object to evidence of a prior act by defendant, by failing to object to comments by the prosecutor during closing argument, and by failing to move for a continuance or adjournment to allow time to examine a newly discovered phone that was used by the complainant to communicate with Menestrina.

---

[1] The jury acquitted defendant of a different count of CSC-I.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 236 (2002). We review the trial court's findings for clear error, but any constitutional determinations are reviewed de novo. *Id*. But because no evidentiary hearing was held, our review is limited to errors apparent on the record. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). The right to effective assistance of counsel is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

## I. EXPERT TESTIMONY

Defendant first argues that his trial counsel provided ineffective assistance by failing to provide expert testimony regarding the forensic interview protocol. He asserts that an expert on forensic interviewing could have contested the testimonies of CPS worker Kelly Schaub and Detective Sergeant James Janisse, who jointly attempted to conduct a forensic interview of the complainant and identified the actions for which defendant was convicted. Trial counsel's decision regarding whether to call an expert witness is a matter of trial strategy, and an appellate court will not substitute its judgment for that of counsel in a matter of trial strategy. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).

Both Schaub and Janisse had undergone training in child forensic interview protocol, and thus were able to testify to various aspects of the protocol. Defense counsel questioned both Janisse and Schaub extensively regarding the forensic interview protocol and how it applied to their interview with the complainant. In addition, the entire interview was recorded and the recording was introduced at trial, as was the written child forensic interview protocol. As set forth more fully below, defense trial counsel was able to elicit numerous examples of the interview not comporting with the protocol.

According to Janisse, the complainant disclosed that defendant had inappropriately touched her in various ways. Regarding the child forensic interview protocol, Schaub testified that the protocol is a methodology to conduct an interview, so as not to inadvertently or mistakenly create an environment where the child provides false information. Janisse stated that

the protocol emphasizes, among other things, that the interview be nonthreatening and that open-ended questions be used to avoid suggesting an answer. However, Janisse admitted that there were several instances where the protocol was not followed during the interview with the complainant.

Janisse testified that they spoke with the complainant in her school principal's office, which he acknowledged was not ideal. However, he and Schaub did not think that consent would have been given for the complainant to be interviewed at the forensic center. Schaub explained that the setting of the interview was based on a sense of urgency because they wanted to interview the complainant immediately to ascertain whether she would be safe returning to home (with her father) that day after school.

Janisse and Schaub acknowledged that the protocol suggests having the subject tell an innocuous story so that the interviewer can ascertain the subject's narrative style; however, they did not do this. Schaub testified that the interview began by asking the complainant about what she had told Menestrina. Janisse stated that any mention of Menestrina was to introduce how the issue of abuse arose by stating that Menestrina was sad, afraid for the complainant, and wanted the complainant to do the right thing. Schaub did not believe that it was protocol to tell the complainant that Menestrina was fearful for her, but Schaub opined that it nevertheless did not affect the "core idea" behind the protocol.

Janisse recalled that the complainant did not initially wish to talk because she feared being grounded. In an attempt to build a rapport with the complainant and to make her feel more relaxed, Janisse told her falsely that he already knew a lot of the information, when in truth, Janisse did not have much information at all at the time. Schaub did not believe that the untruth Janisse told departed from the forensic interview protocol because the goal of the statement was to encourage the complainant to report the truth in one interview, rather than refusing to speak. Janisse believed that the complainant remained apprehensive. As a result, Schaub asked the remaining questions about defendant's activities in the complainant's bedroom.

Janisse also explained that the complainant became fearful while disclosing information, so he reassured her that she would be safe; but he stated that he probably would not do that in the future. Schaub thought that Janisse's promise to keep the complainant safe constituted a deviation from the protocol.

Janisse acknowledged that a forensic interviewer should not reinforce the subject's statements by stating that the interviewer believes the subject, but he admitted that at some point he told the complainant that he believed what the complainant had told him. Schaub also reported that she departed from the protocol after telling the complainant that she believed her; Schaub explained that she did so because the complainant was distraught. But Schaub opined that because she told the complainant this at the end of the interview, the statement could not have affected the complainant's earlier responses to their questioning.

In short, the witnesses testified regarding the purpose of the forensic interview protocol, the protocol's guidelines, and how in several instances the interview with the complainant deviated from the protocol.

Defendant asserts that an expert could have identified the departures from protocol and explained how the interactions that the interviewers and Menestrina had with the complainant affected her disclosures. In contrast, Schaub did not believe that there was an adverse effect, noting that the complainant reported sexual touchings on the basis of her descriptions of the way she was touched and where on her body she was touched. Schaub was not concerned that Menestrina's interactions with the complainant suggested and reinforced a false idea that she had been abused. Defendant has presented no evidence that an expert would have contradicted the interviewers' conclusions or that the manner in which they employed the protocol encouraged the complainant to manufacture allegations against defendant. Menestrina did not participate in a forensic interview; thus, an expert in forensic interviewing protocol would be unnecessary to opine about her interactions with the complainant. It is defendant's burden to make a testimonial record of evidence supporting his claim, *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997), but defendant has not done so.

Moreover, in many instances it is not necessary to retain an expert witness because cross-examination may suffice to attack the testimony of the opposing witness. *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011). Here, a copy of the protocol was admitted into evidence, and on cross-examination, defendant's trial counsel elicited testimony from the interviewers that they departed from the protocol several times. Defense counsel repeatedly questioned whether these departures encouraged the complainant to respond in a way that she thought might please the interviewers. Janisse made an audiorecording of the interview, which was admitted into evidence at defense counsel's behest and played for the jury. In closing argument, defense counsel referred to the protocol and the interviewers' statements, and argued extensively that the forensic interview protocol was developed to ensure that interviews were not suggestive and that the interviewers' departures from the protocol in this case produced an unreliable statement from the complainant. During deliberations, the jury requested to hear the forensic interview a second time.

Thus, defendant's trial counsel was thorough in dissecting the complainant's forensic interview and thoroughly presented to the jury how defects in the interview could have been impermissibly suggestive to the complainant. Defendant has not established that his trial counsel failed to make a reasoned decision not to call an expert or that defendant was denied a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant has not overcome the presumption that it was sound trial strategy to aggressively cross-examine the forensic interviewers, rather than to provide his own expert. This Court will not second-guess that strategy with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009); *Dixon*, 263 Mich App at 398.

## II. PRIOR-ACT EVIDENCE

Defendant next argues that evidence that he had hung the complainant by her coat from a hook when she was a small child was inadmissible under MRE 404(b) and that his trial counsel was ineffective for failing to object to the admission of evidence. But defendant's ineffective assistance argument misses the mark—defense counsel did not object to the admission of the evidence because counsel was the one who had elicited the evidence. Defense counsel introduced the evidence during the complainant's testimony, Menestrina's testimony, and again

during defendant's testimony. Thus, defendant's ineffective assistance claim is best understood as whether his trial counsel was ineffective for seeking to admit the evidence.

As such, we can readily dispose of defendant's claim of evidentiary error because defendant has waived the issue of whether the evidence was admissible. A waiver is the "intentional relinquishment or abandonment of a known right," and it extinguishes any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). "A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Carter*, 462 Mich at 214 (citation omitted). Here, defendant actively consented to the admission of this evidence by introducing it during his examination of the witnesses, and he cannot now challenge its admission on appeal. Therefore, the evidentiary argument that the evidence was inadmissible was waived by defendant.

Next, we address whether counsel was ineffective for introducing the evidence in the first place. The complainant stated that she told Menestrina about an incident that occurred when she was six or seven years old, in which defendant hung her by her coat on a hook for a couple of minutes because she did not eat her dinner. Menestrina confirmed that the complainant told her about the incident. Defendant acknowledged the incident, explaining that he was trying to address the complainant's tantrum over dinner.

Defendant claims that there could have been no plausible trial strategy to expose the jury to another possible instance of abuse involving defendant and the complainant. However, defense counsel elicited the testimony in order to show a motive for why the complainant would falsely accuse defendant of criminal sexual conduct. It was defendant's theory that the complainant reported that defendant sexually abused her in order to please the adults who asked her about the abuse, particularly Menestrina, and then Schaub and Janisse. Defense counsel established through the complainant that she told Menestrina about the incident. Trial counsel then questioned Menestrina about the prior incident in the context of inquiring about how Menestrina had asked the complainant about prior situations in which defendant made the complainant feel uncomfortable, how Menestrina had formed an opinion that defendant was abusing the complainant, and how Menestrina was determined to maintain a close relationship with the complainant until the complainant disclosed additional abuse. When defense counsel questioned defendant about the incident, it was in the context of establishing methods of discipline that he had employed with the complainant.

In his opening statement, defense counsel laid out that theory: he asserted that Menestrina befriended the complainant and repeatedly suggested to the complainant that the complainant had been sexually abused; counsel stated that Menestrina believed that defendant was abusing the complainant on the basis of his appearance and "interesting stories," which seemingly included the odd incident of the complainant being hung on the door. In closing argument, defense counsel argued that Menestrina used the information about the complainant being hung on a hook to suggest to the complainant that defendant was abusive and that the information had influenced Menestrina's opinion—before she had heard of any allegations of sexual abuse—that defendant was sexually abusing the complainant. Thus, Menestrina's interactions with the complainant were an important part of the defense theory that the complainant's report of sexual

touching was based on her attempting to agree with Menestrina that defendant was abusive. Defense counsel developed testimony about what the complainant had told Menestrina *in order to establish why Menestrina was convinced that defendant was abusive*, and, based on these beliefs, counsel argued that Menestrina encouraged the complainant to report to her and others that defendant was sexually abusive. Thus, defense counsel devised a trial strategy that included developing evidence that defendant had hung the complainant on a hook as a disciplinary measure, and that this was told to Menestrina, which motivated Menestrina to encourage the complainant to state that defendant was sexually abusive. We decline to second-guess this trial strategy.

Moreover, assuming it was not reasonable trial strategy to offer this past incident of discipline into evidence, defendant cannot show how there is a reasonable probability that a different result would have occurred at trial but for the admission of the evidence. Importantly, the incident was a one-time event that occurred many years before the events of the charged crimes and lasted only a minute or two. Further, no one argued that because of this prior act, the jury should conclude that defendant committed the charged offenses. And more importantly, the fact that a parent may engage in such disfavored methods of discipline does not readily suggest that the parent would be more prone or amenable to engaging in sexual misconduct with that same child, let alone many years later. Accordingly, we cannot conclude that there was a reasonable probability that but for this assumed error of judgment on defense counsel's part, defendant's trial would have ended with a different outcome.

## III. PROSECUTORIAL ERROR

Defendant argues that the prosecutor engaged in misconduct when he commented during rebuttal closing argument that defendant had engaged in "grooming" behavior with the complainant leading up to the charged offenses. Defendant also argues that his trial counsel provided ineffective assistance when he failed to object to the prosecutor's comment.

The prosecutor has a duty to ensure that the defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The responsibility of a prosecutor is "to seek justice and not merely convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[T]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. But because defendant did not object to the comment, the issue is not preserved, see *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), and our review is for plain error affecting defendant's substantial rights, *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Thus, in the context of prosecutorial misconduct, reversal only is warranted if a curative instruction would have been inadequate to cure any prejudice. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003); see also *Taylor*, 275 Mich App at 185.

"A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008); *People v Fisher*, 193 Mich App 284, 291; 483 NW2d 452 (1992). A defendant "has a right to a fair and impartial jury" with jurors who only deliberate about the "evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). A defendant is deprived of

"his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment" of the United States Constitution when "the jury considers extraneous facts not introduced into evidence." *Id*.

Prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors have "great latitude regarding their arguments" in closing, and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236, citing *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

Here, no witness explicitly testified that defendant had been grooming the complainant by touching her inappropriately. However, the complainant testified that defendant would touch her bottom and that on at least five occasions while she was doing the dishes or other chores, defendant would hug her from behind and touch her breasts over her clothes. Notably, the complainant stated that these touching incidents occurred while the complainant's "stepmother"[2] was not home. Janisse reported that the complainant had disclosed that defendant touched her breasts and buttocks over her clothes. Defendant admitted that he may have inadvertently touched the complainant's breasts while hugging her but denied a sexual intent. Gradually escalating from "less intrusive and less highly sexualized forms of sexual touching" in order to "desensitiz[e] the victim to future sexual contact," or grooming, demonstrates an intent to victimize a person. *People v Steele*, 283 Mich App 472, 491-492; 769 NW2d 256 (2009). Thus, with evidence presented that defendant had engaged in highly questionable behavior, it was eminently reasonable to argue that this behavior, a less intrusive and less sexualized touching, was indeed grooming behavior and was aimed at desensitizing the complainant to future sexual contact. Accordingly, we hold that not only was the prosecution's argument permissible, but any objection to the comment would have been wholly meritless. And counsel is not ineffective for failing to raise a futile or meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## IV. CONTINUANCE OR ADJOURNMENT

On the first day of trial, the complainant testified that a friend had secretly given her a phone to use while the complainant was grounded; the complainant hid it under her bed. She and Menestrina communicated frequently, typically by text, using the hidden phone. On the second day of trial, it was reported that upon hearing the complainant's testimony, defendant recalled that he had found a phone hidden in the complainant's room. Defendant requested that the trial court order the complainant to provide the passcode to the phone so that any exculpatory evidence could be admitted. The trial court examined the complainant, who stated that the phone

---

[2] Although Tammarie Miller-Light, whom the complainant referred to as her "stepmother," testified that she lived with and had a common-law marriage with defendant, Michigan does not recognize common-law marriages. *Reeves v Reeves*, 226 Mich App 490, 493 n 1; 575 NW2d 1 (1997).

was the one she had received from a friend and used. The complainant provided the trial court with the passcode she thought was valid for the phone, but the code did not work. The trial court stated, "I don't see that we're going to [be] able to move forward on the phone issue at this point," and, "I just don't know that, frankly, any additional time being spent on this phone is worth the court's effort at this point. I – it's – it is locked, there's no way to get into it." The phone was then given to Janisse, and defense counsel noted that he was not requesting any analysis of the phone.

Defendant argues that his trial counsel should have requested a continuance or adjournment of the trial so that the contents of the phone could have been examined. In response, the prosecutor argues that the trial court would not have granted a continuance because it had already found that an examination of the phone was futile because it was locked and that defendant was not diligent in producing the phone.

We agree with the prosecution that there was no basis for a continuance. Had defense counsel requested a continuance, it is clear that the trial court would have denied the request. The court had already stated that it did not think that any more "time spent on this phone" would be worth it because there was no known way to gain access to the phone's contents. Defendant on appeal does not challenge the court's finding related to whether the phone was inaccessible, and he does not offer any suggested means to gain access to its contents. Accordingly, any request by defense counsel to seek a continuance would have been denied; and counsel is not deemed ineffective for failing to advance a meritless position. *Ericksen*, 288 Mich App at 201.

Moreover, assuming that counsel should have requested the continuance and that the trial court would have granted the request, despite its earlier proclamations, defendant cannot satisfy the necessary prejudice element to succeed on his claim of ineffective assistance of counsel. Simply put, defendant cannot show how obtaining this continuance would have affected the outcome of the trial. Assuming the continuance would have somehow resulted in defendant being able to unlock the phone, there is nothing in the lower court record (or in any materials submitted on appeal, for that matter) that indicate that the contents of the phone would have been favorable to defendant. Indeed, there is a distinct possibility that the contents could have been damaging to defendant. Thus, without any proof that the phone's contents would have been favorable to defendant, he cannot show that the failure to obtain access to the phone affected the outcome of the trial, and any claim of ineffective assistance necessarily fails. See also *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (stating that a defendant has the burden to establish the factual predicate for his claim of ineffective assistance of counsel).

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan